1   **HENRY TOVMASSIAN, SBN 140388**
    tovmassian@att.net
2   **LAW OFFICES OF HENRY TOVMASSIAN**
    14001 Ventura Boulevard
3   Sherman Oaks, CA 91423
    Telephone: (818) 990-7722
4   Facsimile: (818) 450-3722

5   **GEORGE D. CROOK, SBN 060889**
    latrobonus@gmail.com; gcrook@navlaw.net
6   **NEWMAN AARONSON VANAMAN**
    14001 Ventura Boulevard
7   Sherman Oaks, CA 91423
    Telephone: (818) 990-7722
8   Facsimile: (818) 501-1306

9   Attorneys for Plaintiffs and Counterdefendants

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14   E.S., by and through his Guardian Ad      )  CASE NO. 2:17-cv-02629-SS
15   Litem, STACI STALER; STACI               )
     STALER and TERRY STALER,                 )  **DECLARATION OF CAROL A.**
16                                            )  **SOBEL IN SUPPORT OF**
                                              )  **PLAINTIFFS' MOTION FOR**
17              Plaintiffs and                )  **ATTORNEYS' FEES AND**
                Counterdefendants,           )  **EXPENSES**
18                                            )
     v.                                       )
19                                            )
                                              )  DATE:  November 20, 2018
20   CONEJO VALLEY UNIFIED                    )  TIME:  10:00 a.m.
     SCHOOL DISTRICT,                         )  CRTM: 590
21                                            )
                                              )
22              Defendant and                 )
                Counterclaimant.              )
23   _____      )

24

25

26

27

28

              **DECLARATION OF CAROL A. SOBEL IN SUPPORT OF PLAINTIFFS'**
                   **MOTION FOR ATTORNEYS' FEES AND EXPENSES**

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice before the Supreme Court of the State of California and this Court.  This declaration is submitted in support of the attorney fees requested in this matter. I make this declaration from facts of which I  have personal knowledge and, if I were called to testify to those facts, I could and would do so competently.

2.      I graduated from law school in 1978 and was admitted to practice in December of 1978.  I have been in private  practice  since  April of 1997, specializing in civil rights and civil liberties.  Prior to that time, I was employed by the ACLU Foundation of Southern California.  My practice involves civil rights litigation, focusing primarily on the rghts of homeless individuals, First Amendment rights and police practices.  I have received several awards for my legal work over the years.  A listing of the recognition of my work is set forth in my attached resumé at Exhibit "1".

3.      For six years prior to 1997, I was a Senior Staff Counsel at the ACLU.  During this time, I was responsible for preparing many of the fee motions for the ACLU.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers.  It was my practice to obtain current billing rates for  lawyers of comparable skill  and  experience  at several firms throughout the City.  I did this each year, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates.  At the time that I consulted these individuals, I was aware they were personally involved in pro bono litigation with the ACLU.  Since they worked directly with the ACLU lawyers for whom I sought to establish market billing rates, they could assess the skill and experience of the ACLU lawyers based on personal knowledge.

4.      Since entering private practice, I have continued a similar approach each year to obtain relevant comparisons for billing rates.  As part of my survey, I make it a point to

S-001

obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms. Based on the information I have obtained from each of these firms, I have formed the opinion that civil rights lawyers and public interest lawyers at smaller or solo civil rights firms have rates significantly below those of comparably skilled and experienced attorneys at larger business firms that occasionally do pro bono civil rights and civil liberties work. In general, the rates sought by civil rights attorneys are generally at least 10 to 20 percent lower than the rates of comparable attorneys in the larger private firms that do complex federal litigation. This is so even when the large firm serves as co-counsel with the public interest lawyers.

5.      In addition to speaking with partners at various law firms, I also obtain information on market rates charged by attorneys in the Los Angeles area by reviewing attorney fee applications and awards in other cases. Specifically, I regularly review fee applications submitted by, and court awards made to, MALDEF, the Asian Pacific American Legal Center ("APALC"), ACLU, Disability Rights Legal Center ("DRLC"), Public Counsel, Western Center on Law and Poverty and other public interest groups in Los Angeles to determine the rates sought and awarded as market rates for lawyers from these public interest firms. Very often, these public interest firms have pro bono counsel from large commercial firms. I also obtain fee applications and resulting awards from public records for the federal and state courts when I become aware of a case where statutory fees have been sought.

6.      I have presented at CLEs on attorney fees on several occasions. Over the past several years, I provided several trainings for attorneys at the Legal Aid Foundation of Los Angeles, the ACLU Foundation of Southern California, the National Police Accountability Project and the National Lawyers Guild.

7.      My declarations in support of fee applications have been cited by courts as evidence of reasonable market rates in Los Angeles on several occasions. For example, in *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit repeatedly cited to my declaration in support of the application of attorneys from the ACLU for fees

S-002

under the Equal Access to Justice Act ("EAJA").  Other cases in which my declarations have been cited favorably include, among other cases, *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074, \*21 (C.D. CA 2008), granting fees pursuant to the federal IDEA statute, 20 U.S.C. §1415(i)(3)(c) to the same attorneys as in this fee motion, *Orantes-Hernandez v. Holder,* 713 F.Supp.2d 929, 963–964 (C.D.Cal. 2010); *Atkins v. Miller,* CV-01-01574 DDP (C.D.Cal 2007); *Jochimsen v. County of Los Angeles*, B223518 (2d Dist. June 23, 2011) (unpublished); *Dugan v. County of Los Angeles*, cv 11-08145 CAS (C.D. Cal. Mar. 3, 2014); *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SA-CV-11- 0278 DOC (C.D. Cal. Oct. 23, 2014), and *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018), Doc. 180, p.5.  In *Jochimsen,* the appellate panel held that I was qualified as an expert to opine on market rates.

8.    To analyze reasonable market rates, I apply several principles. First, when available, I look to rates awarded to the same attorneys in previous cases because I understand that such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008).  Next, I look to evidence of billing rates by attorneys engaged in similarly complex business litigation as an approved method of setting reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis. This approach, approved in *Blum*, *supra*, recognizes that most civil rights attorneys take cases on a contingency basis and are not paid hourly for their services. Third, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

S-003

9.    I have been asked to provide a declaration on the reasonable of the fees sought in this action. Plaintiff's counsel provided me with the opposition filings, as well as the declaration in support of the requested rates. I am informed that fees are being for attorneys George Crook and Henry Tovmassian at 2018 rates of $700 and $650 an hour, respectively. Based on my personal knowledge of each attorney, I believe Mr. Crook is a 1974 graduate and Mr. Tovmassian is a 1988 graduate. I am very familiar with both attorneys, as well as many of the other attorneys at the Newman Aaronson Vanaman (NAV) law firm. In the past, I worked and consulted with the NAV firm on several occasions. Based on my interactions with the attorneys at NAV, I believe them to be highly skilled and experienced civil rights attorneys.

10.    It is my opinion that the requested rates for Messrs. Crook and Tovmassian are reasonable and at the low end of the market for comparably skilled and experienced attorneys engaged in civil rights litigation, including special education rights. To support my opinion, I have cited to, or attached, fee awards and supporting declarations in several recent civil rights cases, with rates for counsel of comparable skill and experience in the Los Angeles legal market. Each is a true and correct copy of the document as it appears in the official court records and bears the filing stamp or ECF header.

11.    In *Torrance v. Magee*, Judge Christine Snyder awarded fees at $575 an hour to Valerie Vanaman and George Crook, both of whom graduated the same year as I, noting that the rate was far below the hourly rate at which I had been awarded fees at the time and concluding that the requested rates were, in fact, "comparable to the fees charged by lawyers of reasonably comparable skill, experience, and reputation engaged in special education and other civil rights litigation." 2008 U.S. Dist. LEXIS 95074 at *21. In *Magee*, the Court also awarded fees at $495 an hour to Henry Tovmassian. Those rates are now ten years old. Applying a modest annual increase of three percent to the 2008 rate of $575,[1] the adjusted 2018 rate would now be

[1]Three percent is slightly below the annual legal services factor increase in the Cost of Living for the Los Angeles area. *See*: http://www.bis.gov/news.release/cpi.102.htm. (Table 2. Consumer Price Index for All Urban Consumers (CPI-U): U. S. city average, by

S-004

1  approximately $750 an hour.  Similarly, the adjusted rate for the 2008 award at $495 an hour

2  would now be slightly more than $650 an hour.  These rates are adjusted only for inflation and

3  do not reflect any increase based on additional skill and experience.

4      12.    Attached at Exhibit 2 is the declaration in support of the motion for attorney fees

5  filed by Disability Rights Legal Center in the Ninth Circuit in *Los Angeles Unified School*

6  *District v. Garcia*,  741 F.3d 922 (9th Cir. 2014).  The motion was transferred to the District

7  Court for consolidation with a motion for fees in the District Court.  Based on my review of the

8  case docket on PACER, I believe that the attorney fees were settled prior to the filing of a

9  consolidated motion for fees in the district court.  2:09-cv-09289-VBF-CT [Doc. 52].  *Garcia*,

10  like the case at bar, involved Special Education issues.  The non-profit Disability Rights Legal

11  Center (DRLC), with pro bono attorneys from Milbank Tweed Hadley & McCloy, represented

12  the plaintiff.   The 2014 rates in *Garcia* included $690 an hour for attorney Shawna Parks, a

13  1999 law graduate, and $550 an our for Maronel Barajas, a 2003 law graduate.

14      13.    Attached at Exhibit 3 is the Declaration of Anna Garcia in support of the motion

15  for attorney fees in *Garcia v. Los Angeles* for a related class-action settlement.  2:09-cv-08943

16  DMG-SH [Doc 443].   The 2017 rates sought included $875 an hour for Paula Pearlman,

17  identified as a 1982 law graduate.  Ex. 3, ¶¶ 21-25.   Fees were also sought for Shawna Parks,

18  identified as a 1999 law graduate, at the 2017 rate of $745 an hour.  In support of the 2017 rates,

19  Ms. Garcia's declaration provided evidence of historical rates awarded to both Ms. Pearlman and

20  Ms. Parks of $800 in 2014 and $665 in 2012 an hour, respectively.  *Id.*, ¶¶ 24, 29.

21      14.    Attached at Exhibit 4 is a true and correct copy of a 2012 decision by Judge Carter

22  of the Central District, in *Charlebois v. Angels Baseball, LLP*, 10-cv-0853 DOC, 2012 U.S.

23  Dist. LEXIS 91069 (C.D. Cal. May 30, 2012), awarding fees to attorneys at the civil rights law

24

25  _____

26  detailed expenditure category).

27

28

firm of Schonbrun, DeSimone, Seplow, Harris, Hoffman & Harrison. I provided a fee declaration in support of the fee motion in that case, which is cited to by Judge Carter in approving the requested rates. Although the *Charlebois* case involved disability access issues, both Mr. DeSimone and Mr. Seplow, the primary attorneys in the *Charlebois* case, also litigate employment discrimination, wage-and-hour, and police misconduct cases, among other types of cases. I have prepared fee declarations for them in such cases and am aware that they seek and are awarded the same rate in all of their civil rights litigation. In *Charlebois*, Judge Carter approved the 2012 rates of $695 an hour for Mr. DeSimone, whom I personally know to be a 1985 graduate, and $630 an hour for Michael Seplow, a 1990 graduate. By comparison, the rates sought by this motion are considerably lower. In 2012, Mr. DeSimone had 15 years less experience than Mr. Crook has now and Mr. Seplow had 8 years less experience than Mr. Tovmassian has now.

15.     Attached as Exhibit 5 is a copy of my declaration provided to Mr. DeSimone in a recent employment discrimination case, setting forth the qualifications of all counsel and the rates requested. I was informed by Mr. DeSimone that the parties settled the fees prior to filing the motion. The rate requested for Mr. DeSimone, a 1985 graduate, was $725 an hour. In that same motion, fees were sought for Dennis Wilson, listed as a 1988 graduate, at $650 an hour. This is the same rate now sought by Mr. Tovmassian, who graduated the same year as Mr. Wilson.

16.     Attached at Exhibit 6 is a true and correct copy of a 2013 decision by Judge Marshall, awarding fees to attorneys at Disability Rights Advocates in San Francisco and Disability Rights Legal Center in Los Angeles in a case challenging the failure of Los Angeles to provide adequate provisions for disabled individuals in the City's emergency plan. The decision identified the year of graduation and the experience of each individual. There, the Court approved rates of $665 an hour for Shawna Parks, a 1999 graduate; $700 an hour for Michelle Uzeta, a 1992 graduate; $725 an hour for Ronald Elsberry, a 1987 graduate; and $800 an hour for Lawrence Paradis, a 1985 graduate. Exhibit 6, pp. 4-5. I am personally familiar with each

of these attorneys and provided a supporting declaration in *Communities Actively Living* on the reasonableness of their requested rates. By comparison to these rates, the requested rate of $700 an hour for Mr. Crook and $650 an hour for Mr. Tovmassian are quite low in the Los Angeles legal market for someone of their skill, experience and reputation.

17.     Attached at Exhibit 7 is a copy of the order awarding fees to attorney Christopher Knauf in *Cox. v. Patel*, LASC BC578332 (Sep. 24, 2014). I submitted a declaration in support of the application for attorney fees in the case, which is attached at Exhibit 9. By this motion, Mr. Knauf sought a 2014 rate of $685 an hour. I know Mr. Knauf personally since the time that he was an attorney at DRLC and have continued to be in contact with him, most recently two months ago concerning a disability rights lawsuit he filed in federal court that overlaps on some issues with a case I have before the same judge. He co-counseled a case with Rebecca Thornton, a lawyer who worked with me for eight years, and two non-profits. Based on my personal knowledge, I believe he is a 1996 law graduate. His 2014 rate was higher than Mr. Tovmassian's requested 2018 rate and only $15 an hour below the rate now sought for Mr. Crook, who have 12 and 34 years more experience than Mr. Knauf had in 2014.

18.     By way of comparison, I have also included evidence of the rates sought by a large law firm serving as co-counsel with DRLC in the *Garcia* case. The firm applied its customary billing rates for its commercial clients. The use of billing rates by attorneys engaged in similarly complex business litigation is an approved method of establishing reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis and is consistent with the direction of the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984). *Blum* holds that the determination of appropriate market billing rates for prevailing party attorneys of similar skill, experience and reputation does not depend upon whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate for paying clients with the possibility of receiving a market rate award if successful. Comparison to the rates at private firms engaged in similarly complex litigation is required since most civil rights attorneys are not paid hourly for their services at market rates. *See e.g.,* Pearl,

S-007

*California Attorney Fee Awards*, CEB 2012, §9.109 (2012).

19.     Attached at Exhibit 8 is the 2014 Declaration of Hannah Cannom in support of the fee application to the Ninth Circuit by Milbank Tweed as pro bono counsel with the Disability Rights Legal Center in *LAUSD v. Garcia*, Case No. 10-55879 (9th Cir. 2014) [Doc. 78-3]. In her declaration, Ms. Cannom attested that she is a 2006 law graduate and that her 2014 billing rate was $800 an hour. Ex. 10, ¶¶ 2, 6. She also attested that the 2014 rate for Milbank partner Daniel Perry, a 1999 law graduate, was $1,135 an hour. *Id.* ¶ 7. The firm also requested fees for several associates. For example, Revi-ruth Enriquez was identified as a 2008 law graduate, whose 2014 rate was $760 an hour. *Id.* ¶ 10. Not only are these rates almost double those for the DRLC attorneys in *Garcia*, they are even higher than the rates sought in this motion.

20.     As a final point of comparison, I provide my historic and current fee awards. My current rate is $990 an hour. I settled several cases at $975 an hour in 2018. The last court-approved award I received was $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). The $700 an hour requested by Mr. Crook is $10 an hour below the rate I was awarded in 2009 in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (C.D. Cal. 2009), and in *Multi-Immigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*, cv 07-7032 AHM (C.D. Cal. 2009), both police misconduct cases.

21.     Based on all of the foregoing, I am of the opinion that the rates sought by this motion are well at the low end of reasonable rates in the Los Angeles legal market for attorneys of comparable skill, experience and reputation.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of November, 2018 at Santa Monica, California.

CAROL A. SOBEL

S-008

# EXHIBIT "1"

# CAROL A. SOBEL

725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

|                                                                                                                       |                          |
|-----------------------------------------------------------------------------------------------------------------------|--------------------------|
| LAW OFFICE OF CAROL A. SOBEL                                                                                          | APRIL, 1997 TO PRESENT   |

Solo civil rights law firm.

SENIOR STAFF COUNSEL                                                                                    1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California;
supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY                                                                                                      1985 TO 1990
*ACLU Foundation of Southern Califorina*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other
First Amendment rights.

ASSOCIATE DIRECTOR                                                                                              1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations,
including working with Boards of Directors on development of policy on civil liberties issues.  Engaged in litigation
and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR                                                                                        1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a
501(c)(3) and a 501(c)(4).

## Admitted to Practice:

| | |
|---|---|
| California Supreme Court | No vember, 1978 |
| United States Supreme Court | Sep tember, 1991 |
| Ninth Circuit Court of Appeals | August, 1986 |
| U.S.D.C. Central District of California | February, 1986 |
| U.S.D.C.  Eastern District of California | June, 1990 |

## Litigation Experience:

### Federal courts:   (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403
could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid
Row.
(Lead counsel and argued on appeal)

S-010

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code
§85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person
"lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9ᵗʰ Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal.
2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless
individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9ᵗʰ Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a
preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter
alia*, advance-notice requirements police charges based on the past unlawful conduct of third parties without
adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of
searching for parole and probation violations. See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights
supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles*,
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street
or sidewalk anywhere in the City at any time of day or night. Plaintiffs, all of whom are homeless persons,
brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when
their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil
rights fee shifting statutes. Following oral argument, the Ninth Circuit certified issue of continued availability
of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting
catalyst fee doctrine under federal law absent express legislative authorization. Certified for hearing before the
California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel; argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD).
The injunction prevents the LAPD from engaging in stops of homeless persons for parole and probation sweeps
on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and
subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy regulating time, place and manner of student
speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement
and permitted high insurance and police charges based on the past unlawful conduct of third parties without
adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative
newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and
personnel. The college sought to discipline the professor for violating the district's policies on discrimination
and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for
minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate
state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction
stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22
Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas
of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On
appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court.
Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as
a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S.
Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit
invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys'
professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for
expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme
unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The
en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks
about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity.
Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right
to equal protection, due process and right to petition the government because they violated LAPD
confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)

*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists.
First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan
Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed
12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds. (Lead counsel)

# State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code of Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law. Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian
Science parents for death resulting from use of prayer instead of traditional medicine in treatment
of ill child.  (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires
actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted
as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment
worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for
sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential
informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule
applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring
strict adherence to statutory procedures and limiting exemption of local government agencies from adhering
to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor
overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof
burden.  Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he
constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.
Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of
constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)


# Publications:
# (Partial listing)s


*Catalyst Fees After Buckhannon*

Civil Rights Litigation and Attorney Fees Annual Handbook

(January 2006)


*Free Speech and Harassment: An Overview*
*in the Public Employee Sector*

CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley

June 1999  No. 136


*Defeating Employer Defenses to Supervisor Liability*
*After* Ellerth *and* Faragher

ADVOCATE, October 1998


*Student Expression Under California Law*

UCLA Journal of Education

Volume 3, pp. 127-137 (1989)


*Should Attorneys Be Disciplined For Gender Bias*

Point/Counterpoint ABA Journal   August, 1995


*Fight Illegal Police Practices in State Court*

Los Angeles Daily Journal

March 6, 1992


*Judicial Oversight Limited by Supreme Court*

Los Angeles Daily Journal

May 6, 1991


*Jury Nullification is Conscience of Community*

Los Angeles Daily Journal

August 31, 1990


*A Basic Right Merits Shield From The Mob*

Los Angeles Times

August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes*
*deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988    II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS  p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A .  June, 1968 |

## Professional and Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

| | |
|---|---|
| Los Angeles Center for Law and Community Action<br>Member, Board of Directors | 2015-present |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2014 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

| | |
|---|---|
| National Lawyers Guild - Ernie Goodman Award | 2007 |
| Angel Award - California Lawyer Magazine Award for pro bono work | 2007 |
| CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine | 2008 |
| Top 75 Women Litigators in California - Daily Journal | 2008, 2013 |
| California Super Lawyers - Top 50 Women Lawyers in Southern California | 2014 |
| National Lawyers Guild, Los Angeles Law for the People Award | 2014 |
| ACLU Lifetime Achievement Award | 2017 |

**EXHIBIT "2"**

1   DISABILITY RIGHTS LEGAL CENTER
      Paula D. Pearlman (SBN 109038)
2      Paula.Pearlman@lls.edu
      Anna Rivera (SBN 239601)
3      Anna.Rivera@lls.edu
    800 S. Figueroa St., Suite 1120
4   Los Angeles, CA 90017
    Tel: (213) 736-1496
5   Fax: (213) 736-1428

6
    MILBANK TWEED HADLEY & MCCLOY, LLP
7      Linda Dakin-Grimm (Cal. State Bar No. 119630)
      ldakin@milbank.com
8      Daniel M. Perry (Cal. State Bar No. 264146)
      dperry@milbank.com
9      Delilah Vinzon (Cal. State Bar No. 222681)
      dvinzon@milbank.com
10  601 South Figueroa Street, 30th Floor
    Los Angeles, CA 90017
11  Telephone: (213) 892-4000
    Facsimile: (213) 629-5063
12
    Attorneys for Defendant/Appellee MICHAEL GARCIA
13

14

15         **UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

16

| | |
|---|---|
| 17  LOS ANGELES UNIFIED SCHOOL DISTRICT, | Case No.  10-55879 |
| 18                    Plaintiff, | **DECLARATION OF ANNA RIVERA** |
| 19 | **IN SUPPORT OF** |
| 20  v. | **DEFENDANT/APPELLEE'S** |
|     MICHAEL GARCIA, | **MOTION FOR ATTORNEYS' FEES** |
| 21 | **AND COSTS** |
| 22                    Defendant. | |
| 23 | |

24

25  //

26  //

27     DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S
           MOTION FOR ATTORNEYS' FEES
28

                                        1

Case 2:17-cv-02629-SS  Document 59-1  Filed 11/05/18  Page 22 of 121  Page ID
#:3411
Case 2:02-cv-02958-9  02/23/2014, ID: 1899280, DktEntry: 76-2, Page 22 of 175

I, ANNA RIVERA, declare:

1.     I am a staff attorney at the Disability Rights Legal Center ("DRLC").   I am an attorney at law admitted to practice in California before the U.S. District Courts for the Northern and Southern Districts of California, the U.S. Court of Appeals for the Ninth Circuit, and the Supreme Court of California.  I make this declaration in support of Defendant/Appellee's Application for Attorneys' Fees and Costs.  The facts set forth herein are known to me personally, and, if called as a witness, I could and would testify competently thereto.

2.     DRLC is counsel for Defendant/Appellee Michael Garcia ("Mr. Garcia") along with attorneys from the law firm of Milbank Tweed Hadley & McCloy ("Milbank")

3.     The DRLC is a 501(c) (3) non-profit public interest organization dedicated to advancing the civil rights of people with disabilities.  DRLC accomplishes this mission through several programs, including the Cancer Legal Resource Center (a joint program with Loyola Law School), Disability Litigation Program, Education Advocacy Education, the Inland Empire Program, HIV Law and Policy Project (a joint program with the Los Angeles County Bar Association and UCLA School of Law's Williams Institute), and the Community Advocacy Program.  DRLC, housed at the Loyola Law School Public Interest Law Center in Los Angeles, also runs an externship program through the law school.  All of these programs' clients are from families who meet low-income guidelines established by the federal government.  Consequently, the DRLC does not directly bill its clients for any work undertaken on their behalf and, instead, is almost entirely dependent upon fee award from its successful cases.

4.     Among other matters, the DRLC engages in class action and other impact litigation as well as individual advocacy on behalf of students with disabilities who are or may be eligible for special education and who have been denied special

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S
MOTION FOR ATTORNEYS' FEES

S-021

education and related services or have been denied the appropriate services. DRLC

handles cases in which the client or clients cannot afford to retain a law firm,

where other lawyers will not handle the matter and/or where the injunctive relief is

the primary outcome of the litigation.

## Results Obtained in this Matter

5.    Mr. Garcia obtained excellent results in this case at the administrative

level as well as throughout the appellate process.

6.    On November 16, 2009 Administrative Law Judge Susan Ruff ("ALJ

Ruff") found that the Los Angeles Unified School District ("LAUSD" or

"District") is the entity legally responsible for providing Student with a free

appropriate public education while he is incarcerated in the Los Angeles County

Jail. The ALJ ordered the District to provide Mr. Garcia with the following special

education services: (a) three 1-hour sessions per week of one-to-one instruction in

reading provided by a credentialed special education teacher; (b) three one-to-one

sessions per week of one-to-one instruction in math provided by a credentialed

special education teacher; (c) speech-language therapy provided one-to-one by a

licensed speech-language pathologist for ninety minutes per week, divided into

three thirty-minute sessions; (d) one-to-one counseling for one hour per week

provided by a California licensed mental health professional, such as a

psychologist, psychiatrist, or social worker, or a credentialed school psychologist.

7.    The District was ordered to provide the above services until Mr. Garcia

was no longer eligible for special education, was transferred out of the Los

Angeles County jail, or a new Individual Education Program was signed or ordered

as a result of a due process hearing.

8.    The ALJ further ordered the District to provide Mr. Garcia with the

following compensatory education within sixty days from the date of the Decision

and continuing for one year: (a) one hour per week of one-to-one instruction in

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S
MOTION FOR ATTORNEYS' FEES

S-022

math provided by a credentialed special education teacher; (b) one hour per week of one-to-one instruction in reading provided by a credentialed special education teacher; (c) 30 minutes per week of speech-language therapy provided by a licensed speech-language pathologist.

9.  I have spent a substantial amount of time with Mr. Garcia and have personally witnessed the significant impact that the ALJ's decision has had on his educational career. After suffering a complete cessation of services upon his transfer to the Los Angeles County jail, Mr. Garcia took full advantage of the compensatory education awarded to him. Even after he was no longer receiving special education services due to his age, Mr. Garcia continued with his studies and has since obtained his General Education Degree. I believe receiving the appropriate special education services substantially improved Mr. Garcia's educational path.

10.  In addition, Mr. Garcia has paved the educational paths of future students who will now receive the special education and related services to which they are entitled while incarcerated in county jail.

### Nature of Work on the Case

11.  This case has been active for over four years, from Defendant/Appellee's initial filing in June 2009 to the present. The case was first filed as a Request for a Due Process Hearing with the Office of Administrative Hearing (OAH) on June 5, 2009 seeking a determination of whether the District denied Mr. Garcia a free appropriate public education by failing to provide him with special education and related services while he was incarcerated in the Los Angeles county jail.

12.  Prior to proceeding to hearing, Mr. Garcia and his counsel attended a resolution session and a mediation in good faith attempts to resolve the case. When these efforts failed, the parties proceeded to hearing.

13.  In July 2009 Plaintiff's counsel prepared a Pre-Hearing Conference

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S
MOTION FOR ATTORNEYS' FEES

S-023

Statement clarifying the issues to be decided, prepared witness lists and a comprehensive list of documentary evidence, and participated in a pre-hearing conference.

14.   Starting in August 2009, a due process hearing was held before Administrative Law Judge Susan Ruff.  The hearing lasted three days and included the testimony of 5 witnesses. In all, the hearing took approximately 569 transcript pages of testimony.  Forty-seven exhibits were submitted into evidence. At the end of the hearing both sides submitted extensive closing briefs.

15.   During the hearing underlying this case, Carly Munson, whose qualifications are discussed below, conducted the direct and/or cross-examination of all five witnesses: Mr. Garcia, Mr. Garcia's mother, 1 Los Angeles County Jail administrator, Mr. Garcia's expert assessor and 1 District assessor.

16.   After considering the extensive evidence presented at the due process hearing, the ALJ issued a single-spaced opinion spanning nearly sixteen pages of factual and legal findings.

17.   On December 19, 2009, the District filed a complaint in the Central District Court appealing the ALJ's decision.

18.   On March 22, 2010, the District filed its opening brief. Mr. Garcia filed a responsive brief on April 12, 2010 and the District filed its reply brief on May 1, 2010.  On May 4, 2010, the district court issued an Order affirming the ALJ's decision in its entirety.

19.   On June 2, 2010, the District filed an appeal of the district court's decision with the Ninth Circuit Court of Appeals.

20.   On December 13, 2010, the District filed its opening brief.  Mr. Garcia filed a responsive brief on January 31, 2011 and the District filed its reply on February 2, 2011.  On November 8, 2011, the Ninth Circuit Court invited the California Department of Education ("CDE") to intervene in the matter.  On

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S
MOTION FOR ATTORNEYS' FEES

S-024

November 21, 2011, the CDE filed a motion for leave to file an amicus brief.  Mr. Garcia opposed the motion.  On November 28, 2011 both the District and Mr. Garcia filed their responses.  The Court heard oral argument on December 9, 2012.  Ms. Parks argued on behalf of Mr. Garcia.

21.   On January 20, 2012, the Court certified a question to the Supreme Court of California.  On March 30, 2012, the Supreme Court of California  granted the Ninth Circuit's request and agreed to answer the following reformulated question: Does California Education section 56041, which provides generally that for qualifying pupils between the ages of 18 and 22 years, the school district where the pupil's parent resides is responsible for providing special education and related services, affix responsibility for providing special education to a qualifying individual who is incarcerated in a county jail?

22.   On June 4, 2012, the District filed its opening brief.  Mr. Garcia filed a responsive brief on July 5, 2012 and the District filed its reply on August 2, 2012.  On August 27, 2013, the California School Board Association ("CSBA") filed an amicus curiae brief.  On August 4, 2012, the California Department of Education as well as a group of non-profit organization that provided legal services and advocacy to young adult students with disabilities also filed amicus curiae briefs.  On October 9, 2012, the District filed a consolidated response to the amicus curiae briefs. Mr. Garcia filed a response to the CSBA's amicus curiae brief on October 11, 2012.  The Supreme Court then heard oral argument on October 9, 2013.  Delilah Vinzon argued on behalf of Mr. Garcia.

23.   The Supreme Court of California issued its answer to the certified question on December 12, 2013.

24.   On January 28, 2014, the Ninth Circuit, adopting in full the Supreme Court of California's decision, affirmed the district court's decision which had in turn affirmed the 2009 administrative decision finding the District responsible for

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S MOTION FOR ATTORNEYS' FEES

S-025

providing Mr. Garcia with special education services while he was in the Los Angeles County jail. On February 20, 2013, the Ninth Circuit issued a formal mandate.

### **Qualifications and Billing Practices**

25.   I earned my J.D. from Southwestern University School of Law in 2005.  I have been intermittently involved in this case since 2009 and have been the lead DRLC attorney since October 2011.  My practice for the past 10 years has primarily been in the area of civil rights with a focus on special education and disability rights law.  I have taught an Education Law class at Loyola Marymount University as well as guest-lectured on educational law and policy. Attached hereto as Exhibit "A" is a true and correct copy of my current resume.  My current hourly billing rate is $500.

26.   In addition to myself, Mr. Garcia is seeking compensation for four additional DRLC attorneys who billed on this matter:  (1) Carly Munson, former staff attorney; (2) Andrea Oxman, former staff attorney (3) Shawna L. Parks, former Legal Director of the DRLC; and (4) Maronel Barajas, senior staff attorney. I am personally aware of the qualification of the other lawyers staffing this case.

27.   Carly Munson is a 2006 graduate from Boston University School of Law. Ms. Munson's is currently the Clinical Supervising Attorney at Stanford Law School's Youth and Education Law Clinic.  Ms. Munson's hourly billing rate is $475. In this case I understand that the role of Ms. Munson was primarily responsible for the preparing the substantive motions on special education issues, researching the substantive legal issues related to the administrative hearing, conducting the entirety of the direct and cross-examination of witnesses at hearing; preparing the closing brief for the hearing in lieu of closing arguments; as well as preparing briefs at the district court level.

28.   Andrea Oxman is a 2007 graduate from the University of Southern California Gould School of Law.  Ms. Oxman is currently an associate in private practice at Klinedinst PC.  Ms. Oxman's hourly billing rate is $450 an hour.  In this case I understand that the role of Ms. Oxman was primarily that of preparing briefs on appeal.

29.   Shawna L. Parks was the former Legal Director of the DRLC.  Ms. Parks' hourly billing rate is $690 per hour.  In this case I understand that the role of Ms. Parks was primarily that of directing and supervising briefs on appeal including arguing before the Ninth Circuit Court of Appeals.

30.   Maronel Barajas, Senior Staff Attorney of the EAP, also worked extensively on this case with me. Ms. Barajas performed edits on documents to be submitted before this court as well as the Supreme Court of California.  She was an integral part of case planning meetings and provided important strategic input.  An attorney of 11 years, Ms. Barajas is a graduate from Columbia Law School.  She billed a total of 28.2 hours on this matter. Her hourly billing rate is $550 per hour.  Attached hereto as Exhibit "B" is a true and correct copy of Ms. Barajas' resume.

31.   Other DRLC attorneys also did limited worked on this matter, including: Paula Pearlman, Executive Director of the DRLC, Michelle Uzeta, former Legal Director, former Deputy Director of the DRLC, Deborah Dorfman, and former staff attorney Umbreen Bhatti.  These attorneys either participated on discrete assignments, or consulted on the matter more generally at the federal and appellate court level.

32.   In exercising billing judgment, as discussed more fully below in paragraphs 42-47, DRLC has not charged for the time expended by the attorneys listed in paragraph 18 on this case.

33.   DRLC law clerks also worked on this matter at the rate of $165 per hour.

DRLC relies on its law clerks primarily to do legal and factual research, and did so in this matter. DRLC's law clerks are law students from local law schools, including Loyola Law School.   Law clerks on this matter performed legal research and fact investigation as well as synthesis of facts and data.

34.    In exercising billing judgment, as discussed more fully below in paragraphs 42-47, DRLC has not charged for the time expended by these law clerks on this case.

35.    In my experience, the manner in which DRLC staffed this case is fairly standard for a case of this size and importance.

36.    The attorneys at Milbank worked on this matter as co-counsel and as appropriate. It was essential for the DRLC to co-counsel with the attorneys from Milbank in this matter particularly given their expertise and experience with litigation. The specific work that they did on the case and their rates are discussed fully in the Declaration of Hannah Cannom in Support of Defendant/Appellee's Motion for Attorneys' Fees and Costs that is filed herewith.

## Exercise of Billing Judgment and Determining the Lodestar

37.    The $786,437.35 in fees and costs for DRLC and Milbank attorneys combined represents only a portion of the actual hours expended by Defendant/Appellee's counsel in the over four years this case has been active, and also includes any fees for time expended on preparing the fee petition. In determining the reasonable attorneys' fees for work performed in both the due process portion of this case as well as the subsequent appeal combined, DRLC calculated its lodestar based on its regular 2014 hourly rates. The actual fees and costs incurred by DRLC is set forth below:

/ /

/ /

/ /

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S
MOTION FOR ATTORNEYS' FEES

S-028

| Disability Rights Legal Center | Actual Fees | Actual Costs |
|---|---|---|
| Due Process | $120,401 | $758.36 |
| District Court Appeal | $153,98.50 | $0 |
| Ninth Circuit Appeal | $90,385 | $597.72 |
| Fees on Fees | $22,965 | $0 |
| **Total Actual Fees** | **$249,149.5** | |
| **Total Actual Costs** | | **$1,356.08** |

Thus, DRLC's total actual fees and costs to date are $250,505.58. After exercising billing judgment and writing off certain time, DRLC's lodestar is $240,287.

38.  In reaching the lodestar for determining DRLC's fees and costs, I carefully reviewed all of the DRLC attorneys' billing statements, in consultation with Paula Pearlman, DRLC's Executive Director. In reviewing this time spent by DRLC attorneys and law clerks, I exercised billing judgment and in doing so wrote-off certain time as discussed below in paragraphs 42 through 47. I wrote-off certain time due to a variety of reasons, such as too much time being spent on a task or if the task was arguably overstaffed. I also no-charged all of the time expended on the case by attorneys who performed less than 20 hours of work on the case.

39.  I no-charged all of the time expended on the case by Umbreen Bhatti, former staff attorney, which amounted to 3.7 hours at a rate of $500 per hour for a total of $1,850.

/ /

/ /

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S MOTION FOR ATTORNEYS' FEES

10

S-029

40. I no-charged all of the time expended by Michelle Uzeta, DRLC's former Legal Director, which amounted to 2.3 hours at a rate of $700 per hour for a total of $1,610.

41. I no-charged all of the time expended on the case by Deborah Dorfman, DRLC's former Deputy Director, which amounted to 8.9 hours at a rate of $700 per hour for a total of $6,230.

42. I also no-charged all of the time expended by Paula Pearlman, DRLC's Executive Director, which amounted to 1.9 hours at a rate of $800 for a total of $1,520.

43. Additionally, in exercising billing judgment, I no-charged all of the time spent working on this case by the law clerks working on the case at a rate of $165 per hour for a total of $604.50.

44. Finally, I no-charged all of the time spent working on this case by paralegals at a rate of $230 per hour for a total of $598.

45. With all the aforementioned deductions, the total amount of fees sought by DRLC via this fee motion is: $230,635.

46. DRLC's method of recording attorneys' fees consists of recording time spent on particular cases as contemporaneous as possible with the actual expenditure of the time, in tenth of an hour increments, and submitting those time records in the regular course of business. DRLC's law clerks do the same.

47. DRLC carefully monitors its billing practices and rates in order to ensure that courts are able to properly perform the lodestar analysis for a fee award. As part of this process, DRLC regularly reviews its hourly rates and compares them to the general market both for litigation counsel and also for specialist civil rights and public interest legal services in California. In both instances, DRLC's rates compare favorably.

//

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S MOTION FOR ATTORNEYS' FEES

S-030

48.   The rates utilized by DRLC in the current matter are supported by the Declarations of Carol Sobel, Laurence Paradis, and Barrett Litt, via declarations filed concurrently herewith.

49.   I am personally involved or am familiar with the work of DRLC and the time its attorneys spent on this matter, and I can personally attest that it has been reasonably expended in pursuit of the litigation.  I believe that the remaining time included in DRLC's request is the actual time needed to litigate this matter.

50.   A summary of hours and attorneys' fees sought by DRLC on this matter follows:

| Attorney Name | Graduation | Billing Rate | Hours | Total Fees |
|---|---|---|---|---|
| Anna Rivera | 2005 | $500.00 | 143.4 | $71,700 |
| Maronel Bajaras | 2003 | $550.00 | 25 | $13,750 |
| Carly Munson | 2006 | $475 | 189.8 | $90,155 |
| Andrea Oxman | 2007 | $450 | 82.1 | $36,945 |
| Shawna Parks | 1999 | $690 | 37.3 | $27,737 |
| Total | | | | $240,287 |

51.   A summary of the DRLC's hours and fees broken down by proceeding follows:

| Attorney | Hours | | | Total Fees Sought | | |
|---|---|---|---|---|---|---|
| | Due Process | District Court | 9th Circuit | Due Process | District Court | 9th Circuit |
| Anna Rivera | 20.3 | 0 | 79.8 | $10,150 | 0 | $39,850 |
| Maronel Bajaras | 0 | .1 | 25 | 0 | 0 | $13,750 |
| Carly Munson | 177.6 | 11.7 | .5 | $84,360 | $5,557.50 | 0 |

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S MOTION FOR ATTORNEYS' FEES

12

S-031

| | | | | | | |
|---|---|---|---|---|---|---|
| Andrea Oxman | 38.4 | 17.3 | 26.4 | $17,280 | $7785 | $11,880 |
| Shawna Parks | 3.4 | 2.9 | 31.0 | $2,346 | $2,001 | $21,390 |
| **Total** | **179.7** | **32** | **165.7** | **$114,136** | **$15,343.5** | **$88,575** |

52. Attached as Exhibits C, D, and E to this declaration is a copy of DRLC's billing and costs records for the Michael Garcia case from its inception in 2009 to the present, including both the due process case, district court appeal and the Ninth Circuit appeal, respectively. I have personally reviewed all the entries and calculations in this declaration. Any calculation errors in the totals of hours, fees, or expenses are inadvertent and mine alone.

53. In addition, DRLC seeks attorneys fees incurred in the preparation of the instant motion. Attached as Exhibit F is a copy of DRLC's billing for preparing this attorneys' fees motion.

54. In addition to fees, DRLC incurred out-of-pocket costs in this matter in the amount of $1,356.08 As with time records, costs are recorded in our system as contemporaneously as possible to when they are incurred or when we are billed by a third party, and are submitted by DRLC staff in the regular course of business.

55. In my opinion, the $241,643.08 is a reasonable figure for attorneys' fees and costs. DRLC's lodestar underestimates the time actually invested in litigating this action in that time is inevitably lost or underestimated in the recording process. Particularly given the amount of work invested in this matter, the amount sought by Plaintiff in this matter represents a fair and reasonable fees and costs award in this case.

56. Further, in my opinion, the total $792,023.75 in fees and costs for DRLC

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S MOTION FOR ATTORNEYS' FEES

S-032

1  and Milbank attorneys combined is a reasonable figure for attorneys' fees and
2  costs particularly given the amount of work invested in this matter. The amount
3  sought by Michael Garcia in this matter represents a fair and reasonable fees and
4  costs award in this case.

5          I declare under penalty of perjury of the laws of the United States of
6  America that the foregoing is true and correct, and that this declaration was
7  executed on February 25, 2014 in Los Angeles, California.

ANNA RIVERA

DECLARATION OF ANNA RIVERA IN SUPPORT OF DEFENDANT/APPELLE'S
MOTION FOR ATTORNEYS' FEES

S-033

**EXHIBIT "3"**

DISABILITY RIGHTS LEGAL CENTER
   Anna Rivera (Bar No. 239601)
   anna.rivera@drlcenter.org
   Maronel Barajas (Bar No. 242044)
   Maronel.barajas@drlcenter.org
350 S. Grand Ave Suite 1520
Los Angeles, CA 90071
Telephone: (626) 389-8277
Facsimile: (213) 736-1428

MILBANK TWEED HADLEY & McCLOY LLP
   Linda Dakin-Grimm (Bar No. 119630)
   ldakin@milbank.com
   Daniel M. Perry (Bar No. 264146)
   dperry@milbank.com
   Samir L. Vora (Bar No. 253772)
   svora@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-6063
*Attorneys for PLAINTIFF MICHAEL GARCIA and the Plaintiff Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GARCIA on behalf of himself and others similarly situated,<br><br>                              Plaintiff,<br><br>   vs.<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity, et al.,<br><br>                    Defendants. | Case No. : CV 09-08943 DMG (SHx)<br><br>DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES RELATED TO CLASS ACTION SETTLEMENT WITH COUNTY OF LOS ANGELES |

## DECLARATION OF ANNA RIVERA

I, ANNA RIVERA, declare:

1.      I am a Senior Staff Attorney at the Disability Rights Legal Center ("DRLC"). The DRLC, along with co-counsel at Milbank Tweed, Hadley & McCloy ("Milbank"), represents Plaintiff Michael Garcia and has been appointed by the Court as Class Counsel. The facts set forth herein are based upon my personal knowledge, my review of documents prepared and/or maintained by DRLC in the ordinary course of business, and information provided to me by employees of DRLC's co-counsel, Milbank. If called as a witness, I could and would testify competently thereto.

2.      DRLC is a 501(c)(3) non-profit public interest organization dedicated to advancing the civil rights of people with disabilities through education, advocacy and litigation. Founded in 1975, DRLC is one of the oldest non-profit, public interest law centers to focus on representing individuals with diverse disabilities. DRLC's mission is to champion the rights of people with disabilities through education, advocacy and litigation.  DRLC accomplishes its work through several programs, including the Civil Rights Litigation Program, Education Advocacy Program, Cancer Legal Resource Center, the Inland Empire Program, and the Community Advocacy Program. DRLC, engages in, *inter alia*, class action, multi-plaintiff and other complex impact litigation on behalf of individuals with disabilities who face discrimination or other violations of civil rights or federal statutory protections. DRLC is generally acknowledged to be a leading public interest organization.  Attorneys in the firm have lectured at local, state, and national legal and professional organizations on the law applicable to individuals with disabilities.

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

S-036

3.     DRLC has litigated complex civil rights and public interest cases for over 40 years with a focus on impact complex litigation affecting the disability community.  Examples include: *Willits, et. al. v. City of Los Angeles*, Case No. CV 10-05782 CBM (RZx) (a successfully settled class action challenging the City of Los Angeles' failure to maintain pedestrian right of ways, including sidewalks and curb ramps for people with mobility disabilities); *Ms. Wheelchair California v. Starline Tours*, No. CV11-02620JFW (CWx) (C.D. Cal.) (a successfully settled class action resulting in company-wide change in policy governing accessible tours and seating); *Peter Johnson et al. v. Los Angeles County Sheriff's Department et al.*, USDC Case No. CV 08-03515 DDP (SHx) (a successfully settled class action currently in the monitoring stage on behalf of individuals with mobility impairments to obtain program and physical access while detained in the Los Angeles County Jail); *Casey A., et al. v. Robles, et al.*, Case No. CV10-00192-(GHK) (FMx) (C.D. Cal.) (a successfully settled class action addressing Los Angeles County's failure to provide youth in the County's largest probation camp with basic and appropriate education and rehabilitative services); *Doe2 v. County of San Bernardino, et al.*, (CV ED 02-962 SGL) (a successfully settled class action addressing the County's failure to provide special education and mental health services to children with disabilities in their custody in juvenile detention); *Valenzuela v. County of Los Angeles*, Case No. CV 02-9092 (JWJx) (C.D. Cal.) (a successfully settled class action addressing failure to provide effective communication for people who are deaf and hard of hearing in field and jail settings by Los Angeles County Sheriff's Department); and *Lauderdale v. Long Beach Police Department*, Case No. CV 08-979 ABC (JWJx) (a successfully settled class action addressing police department's failure to provide effective communication for people who are deaf or hard of hearing.).

//

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

4.     As a non-profit law firm and a provider of legal services pursuant to grants and other funding, DRLC does not charge fees to its clients for any work undertaken on their behalf.  DRLC primarily handles cases in which the client cannot afford to retain a law firm, where other lawyers will not handle the matter, and/or where the injunctive relief is the primary outcome of the litigation. Our legal services are provided free of charge to our clients, with attorneys' fees generally paid pursuant to fee shifting statutes.

## Case History and Settlement with County Defendants

5.     Plaintiff obtained excellent results through the settlement reached with Defendants County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Baca in his official capacity (collectively, "County Defendants").

6.     As representatives of class, Plaintiffs engaged in thorough discovery to ensure that the parties and the Court had adequate information to assess the barriers to accessing special education in the jail and relief sought for the class—as well as the reasonableness of the Settlement Agreement.  The discovery included: substantial written discovery, including interrogatories, requests for admissions, and requests for production of documents, which resulted in the combined production of approximately hundreds of documents.  Further, Plaintiffs actively pursued discovery in this matter. Due to disagreements that arose during the discovery process, the parties met and conferred on many occasions and Plaintiffs also filed a discovery motion.  In addition to extensive written discovery, Plaintiffs deposed four County of Los Angeles officials and the County of Los Angeles' expert witness. The County of Los Angeles deposed the Named Plaintiff as well as Plaintiff's expert witness.

7.     In addition, the parties filed cross-motions for summary judgment.

8.     In the summer of 2009, the Parties began settlement negotiations. The Parties participated in extensive arms-length settlement negotiations, which

-3-

included extensive written negotiations, multiple in-person meetings, telephonic settlement negotiations, and multiple in-person settlement conferences with Judge Terry J. Hatter Jr., who acted as a settlement officer in this case.

9.     Concurrently with the Lawsuit, Los Angeles Unified School District ("LAUSD") commenced a civil action ("Related Case") in the United States District Court for the Central District of California, Case No. 2:09-cv-09289-VBF-CT appealing the decision of the California Office of Administrative Hearings ("OAH") which found that, pursuant to California Education Code section 56041, the LAUSD was the entity legally responsible for providing Plaintiff Michael Garcia with a free appropriate public education while he was incarcerated in the LACJ.  The District Court in the Related Case subsequently entered orders affirming the OAH decision. On or about June 3, 2010, LAUSD appealed that order to the United States Court of Appeals for the Ninth Circuit.

10.     Plaintiffs' settlement negotiations with the County Defendants where effectively stayed pending the outcome of LAUSD's appeal in the Related Case in the Ninth Circuit.  On or about January 20, 2012, the Ninth Circuit certified the question to California Supreme Court.  On or about March 28, 2012, The California Supreme Court agreed to take the matter. On or about December 17, 2013, the California Supreme Court issued a seminal decision, holding that the assignment of responsibility for providing special education to eligible county jail inmates between the ages of 18 and 22 years is governed by the terms of California Education Code Section 56041. The Ninth Circuit then issued a final decision on January 28, 2014, finding that the District Court's ruling in the Related Case was consistent with the California Supreme Court's answer to the certified question, the Ninth Circuit Court of Appeals affirmed the District Court's decision affirming the 2009 decision of the administrative law judge.

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

S-039

11. Subsequent to this decision, the Parties renewed their settlement negotiations. The Parties engaged in several in-person meetings, telephonic negotiations, and exchanged multiple written drafts of the Settlement Agreement. The Parties worked diligently to finalize the terms of the proposed Settlement Agreement. On or about February 9, 2017 the Parties entered into a written Settlement Agreement. Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement.

12. Plaintiff obtained excellent results through the settlement reached with Defendants County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Baca in his official capacity (collectively, "County Defendants").

13. Plaintiff described the terms of that settlement in more detail in his Motion for Preliminary Approval of Class Action Settlement Agreement. (*See* Dkt. No. 424-1 and 424-3). As part of the settlement agreement, the County Defendants have agreed to do the following: (a) administer a questionnaire to all newly booked 18-22 year old individuals who are processed through the LACJ Inmate Reception Center aimed at identifying those inmates who would like to receive special education services, (b) notify the charter school that currently provides services at the LACJ of those individuals who affirmatively state they would like to receive special education services, (c) create and distribute an informational pamphlet regarding the availability of special education services and how to request them, (d) modify its Inmate Grievance/Service Request Form to include a box titled "Special Education/IEP," (e) designate an employee or employees who will facilitate the provision of special education services, and (f) train relevant Sheriff's Department staff regarding the provision of special education services to eligible students.

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

S-040

14.     The qualifications of Class Counsel have been set forth in great detail in the earlier class certification briefing in this case and are discussed further below in paragraphs 19-57.  (*See* Dkt. Nos. 81-84).

### DRLC Rates

15.     In setting our rates, DRLC reviews published cases and unpublished decisions concerning attorneys' fees rates used by comparable non-profit public interest organizations, awards that DRLC has received for attorneys' fees, and other information from private attorneys relating to the rates charged by private firms for comparable litigation.  DRLC also carefully monitors its billing practices to ensure that courts are able to properly perform the lodestar analysis for a fee award. We also take into account the experience of the attorneys and staff working on the case and the complexity of the case.

16.     Several courts have found DRLC's hourly rates reasonable. Examples of courts finding DRLC's hourly rates reasonable include:

- *Michael Garcia v. Los Angeles County Sheriff's Dept.*, Case No. CV 09-8943 MMM (SHx), the United States District Court for the Central District of California approved DRLC's 2011 historical rates in a class action. Attached as Exhibit B is a true and correct copy of that order.

- *California in Communities Actively Living Independent and Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) the United States District Court for the Central District of California found DRLC's 2012 historical rates reasonable. This included a range of $450-$550 for staff attorneys and $230 for law clerks.  And the court found a 2012 historical hourly rate of $550 for a 2003 law graduate was reasonable. *Id*. at 6:11-14. The court further found that the plaintiffs had "provided sufficient evidence . . . supporting the reasonableness of their 2012 requested hourly rates" and "that requested hourly rates correspond to the prevailing market rates in the

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

relevant community, considering the experience, skill, and reputation of the attorneys in question." *Id.* at 2:18-20. Attached hereto as Exhibit C is a true and correct copy of that order.

- *Peter Johnson v. Los Angeles County Sheriff's Department*, Case No. CV 08-03515 DDP (SHx), the United States District Court for the Central District of California granted Plaintiffs' Motion for Attorneys' Fees and Costs in full. Attached as Exhibit D is a true and correct copy of that order. In particular, the motion that was granted sought time billed by DRLC attorneys at 2014 historical hourly rates of $800 for a 1982 graduate, $700 for a 1992 graduate, $500 for a 2005 graduate and an hourly rate of $230 for law clerks. See, Declaration of Richard Diaz in support of Plaintiffs' Motion for Attorneys' Fees, attached as Exhibit E (summary of hourly rates sought by Plaintiffs at para. 38 of Diaz Declaration) (exhibits to Declaration omitted due to length).

- *Willits et al v. City of Los Angeles et al*, Case No. CV 10-5782 CBM (RZx), the United States District Court for the Central District granted Plaintiffs' Motion for Attorneys' Fees and Costs and approved DRLC's 2014 historical hourly rates. Attached as Exhibit F is a true and correct copy of that order. In particular, the motion that was granted sought time billed by DRLC attorneys at 2014 historical hourly rates of $680 for a 1987 graduate, $550 for a 2003 graduate, $375 for a 2010 graduate, and an hourly rate of $230 for law clerks. Id. at pg.6.

- *Greater Los Angeles Agency on Deafness, Inc. et al v. Krikorian Premiere Theaters*, LLC, Case No. CV 13-07172-PSG (ASx), the United States District Court for the Central District of California approved DRLC's 2015 historical rates in a class action which had

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

S-042

1  systemic implications regarding access to movie theaters for
2  individuals who are deaf or hard of hearing.  Attached as Exhibit G is
3  a true and correct copy of that order.

4      17.    Experts in the field have also found DRLC's 2016 historical rates to
5  be reasonable.  For example, in a declaration in support of plaintiff's motion for
6  reasonable attorney fees and costs, Mr. Barrett S. Litt opined as to the
7  reasonableness of DRLC's rates in the matter of *Independent Living Center of*
8  *Southern California et al v. City of Los Angeles, et al.*, Case No. CV 12-0551 FMO
9  (PJW), a class action case currently pending in the United States District Court for
10  the Central District of California. Attached as Exhibit H is a true and correct copy
11  of that declaration (exhibits have been omitted due to length).

12      18.    DRLC's current rates have also been found reasonable by Richard
13  Pearl, an expert in the area of attorney fees charged in California and elsewhere.  In
14  a declaration in support of plaintiff's motion for reasonable attorney fees and costs,
15  Mr. Pearl opined as to the reasonableness of DRLC's rates in the matter of *Ochoa*
16  *et al v. City of Long Beach et al*, Case No. 2:14-cv-04307-DSF-FFM, a class action
17  case currently pending in the United States District Court for the Central District of
18  California. Attached as Exhibit I is a true and correct copy of that declaration.

19      19.    DRLC's hourly rates for staff on this case are set forth in the chart
20  below at paragraph 66. This chart lists the billing attorney, year of law school
21  graduation, and pertinent hourly rate for all DRLC staff for whom fees are
22  requested in this matter.  Based on the information that I reviewed in working with
23  the Director of Litigation to set our hourly rates, I believe our rates to be consistent
24  with the current prevailing market rates charged by other attorneys with
25  comparable skills, qualifications, experience, and reputation in the market covered
26  by the Central District.

27  //
28  //

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

S-043

## DRLC Attorneys and Their Roles

20.     In addition to the hours expended by Milbank, Plaintiff is seeking compensation for eight DRLC attorneys who billed on this matter:  (1) Paula Pearlman, former Executive Director; (2) Shawna L. Parks, former Legal Director of the DRLC; (3) Maronel Barajas, Director of Litigation; (4) Matthew Strugar, former Staff Attorney; (5) Umbreen Bhatti, former Staff Attorney; (6) Carly Munson, former Staff Attorney; (7) Andrea Oxman, former Staff Attorney; (8) Elliot Field, former Staff Attorney.

21.     Paula Pearlman was the Executive Director at DRLC when she worked on this instant matter. As Executive Director, her duties included oversight of DRLC's litigation efforts. She also taught a Disability Rights class at Loyola Law School in Los Angeles.  I understand that, prior to joining DRLC, Ms. Pearlman was a former Supervising Attorney at the California Women's Law Center, where she specialized in sex discrimination in employment and education. I understand that Ms. Pearlman graduated from the Southwestern University School of Law in 1982. I understand that she has served on the U. S. Access Board Courthouse Access Advisory Committee, as the board chair of the Employment Round Table of Southern California (ERTSC), as a board member of the Legal Aid Association of California, as co-chair of the Lawyer Representatives of the Central District, Ninth Circuit Judicial Conference, and as a member of the California State Bar Standing Committee on the Delivery of Legal Services.

22.     I understand that Ms. Pearlman has received numerous awards including the 2010 St. Ignatius of Loyola Award, St. Thomas More Society, the 2009 "FEHA 50th Anniversary Civil Rights Award," from the California Department of Fair Employment and Housing, and she was a 2007 Legal Aid Association of California Attorney Award of Merit Recipient. She was named a "Super Lawyer" in 2009 in the area of public interest law and class actions, and

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

S-044

1  she was a 2007 finalist for "Attorney of the Year" for Trial Lawyers for Public

2  Justice.

3      23.    I understand that Ms. Pearlman's experience with the plaintiffs and

4  understanding of public entity work was important to filing this case. I understand

5  that Ms. Pearlman participated in depositions, settlement conferences, and

6  conferred within DRLC to discuss strategy and tasks.

7      24.    A 2014 historical hourly rate of $800 was previously approved for

8  Ms. Pearlman in *Peter Johnson v. Los Angeles County Sheriff's Department*, Case

9  No. CV 08-03515 DDP (SHx); that order and related declaration are attached

10  hereto as Exhibits D and E.

11      25.    DRLC seeks compensation for Ms. Pearlman at an hourly rate of

12  $875, which is DRLC's 2017 billing rate for an attorney of her experience.

13      26.    Shawna L. Parks is a 1999 graduate of U.C. Berkeley School of

14  Law, and a 1995 graduate of U.C. Berkeley.  I understand that from 1999-2000

15  Ms. Parks was a Fulbright Scholar in Budapest, Hungary, where she researched a

16  recently enacted nondiscrimination statute, worked on developing test litigation,

17  and co-organized a conference of Eastern European disability rights advocates.

18      27.    From early 2012 through late 2013 Ms. Parks was a Director of

19  Litigation at Disability Rights Advocates in Berkeley, California. From 2005

20  through early 2012 Ms. Parks was at the Disability Rights Legal Center where she

21  was Legal Director from 2009 through late 2011. Prior to her work at the DRLC

22  Ms. Parks was a staff attorney and Equal Justice Works Fellow at Disability Rights

23  Advocates from 2000 through 2003. From 2003 through 2004 she was an associate

24  at what was then known as Schonbrun DeSimone Seplow Harris & Hoffman,

25  where she worked primarily on race and gender discrimination employment cases.

26  Ms. Parks has extensive expertise in the substantive areas of disability rights, civil

27  rights and education, including special education. She has litigated numerous

28

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

cases, including both class actions and individual cases, in these fields. Ms. Parks is currently the principal attorney in the Law Office of Shawna L. Parks, which she founded in 2014.

28. I understand that in the instant matter Ms. Parks participated in many aspects of the litigation including discovery, research, settlement, motion work and engaged in strategy sessions.

29. A 2012 historical rate of $665 was approved for Ms. Parks in *CALIF, et al., v. City of Los Angeles, et al.*, 2011 WL 4595993 (C.D. Cal. 2011), Case No. 2:09-cv-00287- CBM-RZ. A true and correct copy of that fee order is attached hereto as Exhibit C. In that Order the Court describes Ms. Parks as "nationally recognized as a leading disability rights attorney." Order at 4:8

30. DRLC seeks compensation for Ms. Parks at an hourly rate of $745, which is DRLC's 2017 billing rate for an attorney of her experience.

31. Maronel Barajas is the Litigation Director at the Disability Rights Legal Center. As the Director of Litigation, she oversees all aspects of DRLC's litigation program, including supervising and litigating individual, multi-plaintiff, and class action cases. This includes coordinating, supervising and providing substantive expertise and support to attorney staff and legal assistants, as well as law clerks and volunteers in DRLC's two offices. Further, her duties as the Director of Litigation also include negotiating co-counseling agreements, outreach, grant writing, retaining experts, and budgeting. She also lectures and provides training on disability rights issues in various forums and participates in legislative and regulatory comment on behalf of the organization.

32. Ms. Barajas is a 2003 graduate of Columbia Law School and 2000 graduate of the University of California, Irvine. The majority of her practice has focused on civil rights matters, including matters on behalf of individuals with disabilities. Indeed, civil rights has been my primary focus for approximately twelve years. Approximately, nine of those years have been spent on cases

-11-

1  exclusively on behalf of individuals with disabilities.  During this time, she

2  litigated various cases in the area of disability rights, including individual, multi-

3  plaintiff and class action cases. These cases have primarily been against public

4  entities, and most often with the goal of system reform. Ms. Barajas has also

5  supervised attorneys in numerous lawsuits affecting the rights of people with

6  disabilities. As a result, she has developed extensive knowledge in the area of

7  disability rights cases, cases requiring policy reform, and cases involving public

8  entities.

9       33.    After law school, from late 2004 through early 2005, Ms. Barajas

10  worked as a legal representative for MACS Copy and Interpreting Inc., where her

11  work focused primarily on worker's compensation matters. In early 2005, Ms.

12  Barajas joined DRLC and held various positions until she left in late 2008.  These

13  positions included being an Education Advocate, Staff attorney, Associate Director

14  and ultimately Director of the Education Advocacy Program. During 2005-2008,

15  her work was exclusively on behalf of people with disabilities, with a focus on

16  matters on behalf of students with disabilities.  Ms. Barajas worked on cases at the

17  administrative and federal court level. She also regularly lectured and trained on

18  issues relating to individuals with disabilities, including participating in legislative

19  and regulatory comment on behalf of the organization.  By way of example, Ms.

20  Barajas was an Adjunct Professor at Loyola Marymount University in Los Angeles

21  where she taught an upper division Special Education and the Law course; guest

22  lectured at Loyola Law School's Disability Rights and Special Education Law

23  class; and wrote articles related to the rights of students with disabilities. In her

24  capacity as Director of the Education Advocacy program, she also supervised

25  attorney staff and managed DRLC's Education Advocacy Program's externship

26  program. In 2007, during Ms. Barajas tenure as the Director, the Education

27  Advocacy Program along with DRLC's litigation program was recognized as the

28  Agency Winner at the National Association of Counsel for Children in Keystone,

-12-

Colorado for improving the educational opportunity for students with disabilities held in detention facilities and for improving the access to courts for individuals with disabilities.

34. In late 2008, Ms. Barajas left DRLC to become an associate with the former law firm of Traber & Voorhees, a prominent civil rights litigation firm in Pasadena, California. Traber & Voorhees recently dissolved after one its founding partners, Theresa M. Traber, was appointed to the bench. At Traber & Voorhees, her focused primarily on discrimination cases in the employment, education, and custodial context. Ms. Barajas handled matters at the state, federal and state appellate level. She remained an associate with Traber & Voorhees until early 2011.

35. In early 2011, Ms. Barajas returned to work with DRLC as the sole Senior Staff Attorney in the litigation program. In addition to focusing on impact and complex litigation, she co-authored an article with Paula Pearlman, Esq. for the 2011-2012 Ability magazine issue, titled "a boy and his dog" regarding a case where she was lead counsel from DRLC. To my knowledge, it was the first case of its kind where a federal court judge held that a student with autism had the right to attend school with his service dog. Until approximately 2013, Ms. Barajas also served as an Adjunct Professor at Loyola Marymount University where she taught an upper division Special Education and the Law course. Ms. Barajas also oversaw DRLC's externship program with Loyola Law School until that partnership ended. In 2015, she was promoted to Managing Attorney of the litigation department, and in late 2016, she was again promoted, this time to Director of Litigation, a position that she still holds.

36. I understand that Ms. Barajas participated in settlement and engaged in strategy sessions.

37. A 2012 historical hourly rate of $550 for a 2003 law graduate was previously approved in *California in Communities Actively Living Independent and*

-13-

1    *Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) at

2    6:11-14; that order and related declaration are attached hereto as Exhibit C.

3       38.     DRLC seeks compensation for Ms. Barajas at an hourly rate of $675,

4    which is DRLC's 2017 billing rate for an attorney of her experience

5       39.     Matthew Strugar is a 2004 graduate from the University of Southern

6    California Gould School of Law. When he worked on this matter, he was a Staff

7    Attorney with the litigation department. While at DRLC, Mr. Strugar focused on

8    class action and impact litigation centered on matters in the correctional context.  I

9    understand that Mr. Strugar participated in working with plaintiff and class

10    members.

11       40.     DRLC seeks compensation for Mr. Strugar at an hourly rate of $660,

12    which is DRLC's 2017 billing rate for an attorney of his experience.

13       41.     Umbreen Bhatti graduated from the University of Michigan Law

14    School in 2005. I understand that prior to joining DRLC she was an associate at

15    Latham & Watkins and later a staff attorney at the ACLU of Delaware, where she

16    managed a caseload involving civil rights cases in state and federal court and

17    before state commissions, litigating a wide variety of civil rights issues. While she

18    worked on this matter she was a Staff Attorney with the litigation department.

19    While at DRLC, Mr. Gibson focused on class action and impact litigation centered

20    on physical and programmatic accessibility for individuals with disabilities. In the

21    instant matter, I understand that Ms. Bhatti participated in settlement and engaged

22    in strategy sessions.

23       42.     A 2014 historical hourly rate of $500 was previously approved for a

24    2005 graduate in *Peter Johnson v. Los Angeles County Sheriff's Department*, Case

25    No. CV 08-03515 DDP (SHx); that order and related declaration are attached

26    hereto as Exhibits D and E.

27       43.     DRLC seeks compensation for Ms. Bhatti at an hourly rate of $640,

28    which is DRLC's 2017 billing rate for an attorney of her experience.

Case 2:17-cv-02629-SF-Document 59-1 Filed 11/05/18 Page 51 of 121 Page ID
#:3497
Case 2:03-cv-02949-SMG-SH Document 443 Filed 05/08/17 Page 16 of 21 Page ID
#:2657

44. Carly Munson is a 2006 graduate from Boston University School of Law. When she worked on this matter, she was a Staff Attorney. While at DRLC, Ms. Munson focused on impact litigation centered with a focus on matters in the educational context. I understand that Ms. Munson participated in drafting, reviewing, and revising documents related to the complaint, investigating the claims, working with the plaintiffs, motion work and settlement. Ms. Munson also participated in regular conference calls with co-counsel to discuss strategy and tasks and conferred within DRLC and with co-counsel.

45. DRLC seeks compensation for Ms. Munson at an hourly rate of $625, which is DRLC's 2017 billing rate for an attorney of her experience.

46. Andrea Oxman is a 2007 graduate from the University of Southern California Gould School of Law. When she worked on this matter, she was a Staff Attorney with the litigation department. While at DRLC, Ms. Oxman focused on class action and impact litigation centered on physical and programmatic accessibility for individuals with disabilities. Ms. Oxman is currently an associate in private practice at Klinedinst PC. I understand that Ms. Oxman participated in drafting, reviewing, and revising documents related to the complaint, investigating the claims, working with the plaintiffs, discovery, motion work and settlement.

47. DRLC seeks compensation for Ms. Oxman at an hourly rate of $600, which is DRLC's 2017 billing rate for an attorney of her experience.

48. Elliot Field is a 2009 graduate from Loyola Law School. When he worked on this matter, he was a Staff Attorney. While at DRLC, Mr. Field focused on impact litigation centered with a focus on matters in the educational context. I understand that Mr. Fields participated in depositions and worked with plaintiffs.

49. DRLC seeks compensation for Mr. Field at an hourly rate of $525, which is DRLC's 2017 billing rate for an attorney of his experience.

50. DRLC law clerks also worked on this matter. DRLC seeks compensation for law clerks at an hourly rate of $250. DRLC seeks a currently

-15-

Case 2:17-cv-02629-SG- Document 59-1 Filed 11/05/18 Page 52 of 121 Page ID
#:3448
Case 2:09-cv-08943-SMG-SH Document 443 Filed 05/08/17 Page 52 of 121 Page ID
#:2553

1   hourly rate of $250 for law clerks. DRLC relies on its law clerks primarily to do

2   legal and factual research, and did so in this matter. DRLC's law clerks are law

3   students from local law schools, including Loyola Law School.

4        51.    In *California in Communities Actively Living Independent and Free,*

5   *et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) the United

6   States District Court for the Central District of California found DRLC's 2012

7   rates of $230 for law clerks reasonable; that order and related declaration are

8   attached hereto as Exhibit C.

9        52.    DRLC also seeks compensation for work performed by Legal

10  Assistants at a currently hourly rate of $250.

11       53.    In *California in Communities Actively Living Independent and Free,*

12  *et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) the United

13  States District Court for the Central District of California found DRLC's 2012

14  rates of $230 for legal assistants reasonable; that order and related declaration are

15  attached hereto as Exhibit C.

16       54.    The manner in which DRLC staffed this case is fairly standard for a

17  case of this size and importance.

18       55.    DRLC made every effort to litigate this matter efficiently by

19  coordinating our work, minimizing duplication, and assigning tasks in a time and

20  cost efficient manner, based on the time keepers' experience levels and talents.

21       56.    The attorneys at Milbank worked on this matter as co-counsel and as

22  appropriate. It was essential for the DRLC to co-counsel with the attorneys from

23  Milbank in this matter particularly given their expertise and experience with

24  litigation. The specific work that they did on the case and their rates are discussed

25  fully in the Declaration of Samir L. Vora in Support of Plaintiff's Motion for

26  Award of Attorneys' Fees and Expenses that is filed herewith.

27  //

28  //

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

S-051

Case 2:07-cv-02629-SS  Document 59-1  Filed 11/05/18  Page 53 of 121  Page ID
#:1539
Case 2:07-cv-02943-SMG-SH  Document 443  Filed 05/08/17  Page 53 of 121  Page ID
#:8452

**Method of Recording Time**

57.     DRLC's method of recording attorneys' fees consists of recording time spent on particular cases as contemporaneously as possible with the actual expenditure of the time, in tenth of an hour increments, and submitting those time records in the regular course of business. DRLC's law clerks and support staff do the same.

**Exercise of Billing Judgment and Determining the Lodestar**

58.     The $200,000 in fees and costs for DRLC and Milbank attorneys combined represents only a portion of the actual hours expended by Plaintiffs' counsel in the nearly eight years this case has been litigated. In determining the reasonable attorneys' fees for work performed DRLC calculated its lodestar based on its current 2017 hourly rates as well as apportioning those fees for work attributable to County Defendants.

59.     DRLC's total actual fees and costs through October 2011 is $810,851. A true and correct copy of DRLC's billing statement is attached here to as Exhibit J.

60.     In order to determine the amount of fees to apportion to County Defendants, I carefully reviewed DRLC's billing statement on an entry by entry basis in order to categorize time spent in the following categories: (a) time related to general furtherance of Plaintiff's claims in the case as a whole; and (b) time related specifically to County Defendants.

61.     This resulted in 869.70 hours of time, for a total value of $538,213.50 for time spent in general furtherance of the litigation.  And, 163.90 hours of time, for a total value of $101,812.50 for time spent related specifically to County Defendants.

62.     I then equally divided the time spent in general furtherance of the litigation among all Defendants in the litigation, for a total amount of

-17-

approximately 173.9 hours of time per defendant, for a total value of $107,642.70.

63.  I then added $101,812.50 (total value for time spent related specifically to County Defendants) and $107,642.70 (the corresponding fraction of time spent in general furtherance of the litigation among all Defendants). This billing discretion resulted in final lodestar of **$209, 455.20** for approximately 338 hours as applied to the County Defendants

64.  In reaching the lodestar for determining DRLC's fees and costs, I carefully reviewed all of the DRLC attorneys' billing statements.  In reviewing this time spent by DRLC attorneys and law clerks, I exercised billing judgment and in doing so wrote-off certain time, as appropriate.

65.  Below is a table of the DRLC time-keepers on this matter, including hours and total fees attributed to its claims against the County Defendants at the time of settlement:

| Attorney Name | Graduation | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Paula Pearlman | 1982 | $875 | 29.10 | $25,462.50 |
| Shawna Parks | 1999 | $745 | 223.70 | $166,656.50 |
| Maronel Barajas | 2003 | $675 | 20.10 | $13,567.50 |
| Matthew Strugar | 2004 | $660 | 12.00 | $7,920.00 |
| Umbreen Bhatti | 2005 | $640 | 11.80 | $7,552.00 |
| Carly Munson | 2006 | $625 | 143.00 | $89,375.00 |
| Andrea Oxman | 2007 | $600 | 758.60 | $455,160.00 |
| Elliot Field | 2009 | $525 | 49.30 | $25,882.50 |
| Law Clerks | N/A | $250 | 75.90 | $18,975.00 |

-18-

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

| | | | | |
|---|---|---|---|---|
| Paralegals | N/A | $250 | 1.20 | $300.00 |
| DRLC Total Fees | | | 1331.60 | $810,851.00 |
| Subtotal of DRLC Fees Spent in General Furtherance of Litigation | | | 869.70 | $538,213.50 |
| Subtotal of DRLC Fees Spent Specifically Related to County Defendants | | | 169.90 | $101,812.50 |
| **DRLC Fees Apportionment to County Defendants** | | | | **Total: $209, 455.20** |

66.  Since the time of settlement, DRLC has expended additional time negotiating and executing an amendment to the settlement agreement and in preparing the preliminary approval papers as well as the instant attorneys' fee motion.

67.  I have personally reviewed all the entries and calculations in this declaration. Any calculation errors in the totals of hours, fees, or expenses are inadvertent and mine alone.

68.  In addition to fees, DRLC incurred out-of-pocket costs, as apportioned to County Defendants, which it has not included in its request here. As with time records, costs are recorded in our system as contemporaneously as

-19-

possible to when they are incurred or when we are billed by a third party, and are
submitted by DRLC staff in the regular course of business.

69. The fees claimed here are for the work necessary to investigate and
develop Plaintiffs' claims, secure class certification, secure discovery needed for
trial , prepare a motion for partial summary judgment, and to achieve a resolution
that remedies violations of the civil rights of students in jail eligible to received
special education services

70. In my opinion, the total $200,000 in fees and costs for DRLC and
Milbank attorneys combined is a reasonable figure for attorneys' fees and costs
particularly given the amount of work invested in this matter. The amount sought
by Plaintiff in this matter represents a fair and reasonable fees and costs award in
this case.


I declare under penalty of perjury of the laws of the United States of
America and the State of California that the foregoing is true and correct, and that
this declaration was executed on June 8, 2017 in Whittier, California.




ANNA RIVERA

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES                                    S-055

**EXHIBIT "4"**

# *Charlebois v. Angels Baseball LP*

United States District Court for the Central District of California, Southern Division

May 30, 2012, Decided; May 30, 2012, Filed

Case No.: SACV 10-0853 DOC(ANx)

**Reporter**

993 F. Supp. 2d 1109 *; 2012 U.S. Dist. LEXIS 91069 **

J. PAUL CHARLEBOIS, Plaintiff, vs. ANGELS BASEBALL LP et al., Defendants.

**Prior History:** *Charlebois v. Angels Baseball, LP, 2011 U.S. Dist. LEXIS 71452 (C.D. Cal., June 30, 2011)*

## Core Terms

attorneys', rates, Defendants', cases, declarations, billed, comparator, disability, rights, firms, statutes, hourly rate, Reduction, prevailing party, awarding, attorney's fees, lodestar, courts, hours worked, prevailing, graduate, provides, parties, summary judgment motion, prevailing market rate, settlement agreement, lodestar figure, fee-shifting, requirements, calculated

## Case Summary

### Overview

Plaintiff's motion for attorneys' fees was granted where he qualified as a prevailing party under *42 U.S.C.S. § 12205*, *Cal. Civ. Code § 55*, and *Cal. Code Civ. Proc. § 1021.5*, and the amount requested was reasonable based on class counsel's fee rates and the number of hours worked.

### Outcome

Motion granted.

## LexisNexis® Headnotes

Civil Rights Law > ... > Protection of Disabled

Persons > Americans With Disabilities Act > Remedies

*HN1*[⬇] *42 U.S.C.S. § 12205* provides that a court may allow the prevailing party to receive attorneys' fees and costs from defendants in cases brought under the Americans with Disabilities Act of 1990, *42 U.S.C.S. § 12101 et seq.* The United States Court of Appeals for the Ninth Circuit has reversed as an abuse of discretion the denials of attorneys' fees under *§ 12205* where the party seeking fees satisfied the statutory criteria. This is because a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.

Civil Rights Law > ... > Protection of Disabled

Persons > Americans With Disabilities Act > Remedies

*HN2*[⬇] See *42 U.S.C.S. § 12205*.

Civil Rights Law > ... > Protection of Disabled

Persons > Americans With Disabilities Act > Remedies

*HN3*[⬇] The United States Court of Appeals for the Ninth Circuit has held that an Americans with Disabilities Act of 1990, *42 U.S.C.S. § 12101 et seq.*, plaintiff is a prevailing party if she: (1) achieves a material alteration of the legal relationship of the parties; and (2) that alteration is judicially sanctioned. The second requirement can be met in many ways, including when a party enters

993 F. Supp. 2d 1109, *1109; 2012 U.S. Dist. LEXIS 91069, **91069

into a legally enforceable agreement with the defendant.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

Civil Rights Law > ... > Protection of Disabled Persons > Americans With Disabilities Act > Remedies

*HN4*[⬇] *Cal. Civ. Code § 55* provides that a prevailing party shall be entitled to receive attorneys' fees and costs from defendants in cases brought under the California Disabled Persons Act, *Cal. Civ. Code § 54*.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

Civil Rights Law > ... > Protection of Disabled Persons > Americans With Disabilities Act > Remedies

*HN5*[⬇] See *Cal. Civ. Code § 55*.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

*HN6*[⬇] *Cal. Code Civ. Proc. § 1021.5* provides that a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (1) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (2) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (3) such fees should not in the interest of justice be paid out of the recovery, if any. These requirements are satisfied, and thus an award under *§ 1021.5* is appropriate, if the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the

lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

*HN7*[⬇] Unlike the prevailing party fee-shifting statutes of federal law, California law does not require a judicially recognized change in the legal relationship between the parties as a prerequisite for obtaining attorney fees under *Cal. Code Civ. Proc. § 1021.5*.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN8*[⬇] Courts reverse as an abuse of discretion the denials of attorneys' fees under *Cal. Code Civ. Proc. § 1021.5* where the party seeking fees satisfied the statutory criteria.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

*HN9*[⬇] The necessity and financial burden requirement of *Cal. Code Civ. Proc. § 1021.5* seeks economic equalization of representation in cases where private enforcement is necessary. This requirement asks the court to examine: (1) the adequacy of public enforcement (necessity prong); and (2) the financial disincentives and incentives of private action (financial burden prong).

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

Civil Rights Law > ... > Protection of Disabled

993 F. Supp. 2d 1109, *1109; 2012 U.S. Dist. LEXIS 91069, **91069

Persons > Americans With Disabilities Act > Remedies

*HN10*[⬇] A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. *42 U.S.C.S. § 12205*, *Cal. Civ. Code § 55*, and *Cal. Code Civ. Proc. § 1021.5* calculate the reasonableness of attorneys' fees using the lodestar method, which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN11*[⬇] Under the lodestar method, attorneys are entitled to be compensated for all hours reasonably spent on the matter. The lodestar figure is presumed to represent an appropriate fee, but the court may adjust the figure upward or downward to take into account special factors. Adjustments to this presumptively reasonable amount may then be made based upon the Kerr factors to the extent that those factors are not reflected in the lodestar calculation. The Kerr factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN12*[⬇] Both the United States Supreme Court and California Supreme Court have held that fee awards to public interest attorneys who do not charge their clients are calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel. The proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN13*[⬇] For an attorneys' fee award to be reasonable, it must be based on current, rather than historic, hourly rates.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN14*[⬇] In determining the reasonableness of attorneys' fee rates, judicial precedent expressly endorses comparisons to lawyers of reasonably comparable skill, experience, and reputation and does not require prevailing party's counsel to also prove that their firm is the same size or has the same level of prestige as that of comparator attorneys.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN15*[⬇] As courts recognized when rejecting an argument to reduce fee rates to the rates awarded in cases prior to the action for which fees are sought, such cases do not necessarily reflect the prevailing market rate, which is the appropriate standard. While past fee rates may be useful evidence to show a floor below which a court's fee calculations should not drop, past fee rates in no way support the conclusion that a court should reduce the fees in

993 F. Supp. 2d 1109, *1109; 2012 U.S. Dist. LEXIS 91069, **91069

the present case to the rates awarded in the past.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN16*[ ] Courts routinely recognize that attorneys' fee rates increase over time based on a variety of factors.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN17*[ ] Affidavits of the plaintiffs' attorney regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN18*[ ] In the context of determining the reasonableness of an attorneys' fee award, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case. To reduce the number of hours worked, it must appear that the time claimed is obviously and convincingly excessive under the circumstances. This is true because the purposes of the fee-shifting statutes will not be met unless the prevailing party's attorneys are reasonably compensated for all their time.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN19*[ ] When a prevailing party establishes the reasonableness of its counsel's hours, the burden shifts to the non-prevailing parties to rebut with evidence challenging the accuracy and reasonableness of the hours.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN20*[ ] The United States Court of Appeals for the Ninth Circuit held that there was no basis for requiring an attorney who actually contributed to the work product of another attorney to be required to enter appearances in order to be eligible for an attorney's fee award. Similarly, other courts find that the hours of contract attorneys nonetheless merit inclusion in the lodestar hours.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN21*[ ] Extensive authority supports awarding attorneys' fees for time spent on unfiled motions.

**Counsel:** [**1] For J Paul Charlebois, an individual on behalf of himself and on behalf of all others similarly situated, Plaintiff: Amanda Rose Canning, Schwartz Steinsapir Dohrmann & Summers, Los Angeles, CA; Michael D Seplow, Schonbrun DeSimone Seplow Harris Hoffman & Harrison LLP, Venice, CA; Vincent James DeSimone, Schonbrun DeSimone Seplow Harris and Hoffman LLP, Venice, CA.

For Angels Baseball LP, Defendant: Brent Mathew Giddens, Dawn M Irizarry, Carlton DiSante and Freudenberger LLP, Los Angeles, CA; Timothy M Freudenberger, Carlton DiSante & Freudenberger, Irvine, CA.

For City Of Anaheim, Defendant: Dawn M Irizarry, Carlton DiSante and Freudenberger LLP, Los Angeles, CA.

**Judges:** DAVID O. CARTER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** DAVID O. CARTER

# Opinion

993 F. Supp. 2d 1109, *1109; 2012 U.S. Dist. LEXIS 91069, **1

[*1112] **ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Before the Court is a Motion for Final Approval of Attorneys Fees, Costs, and Enhancement Fees (Dkt. 95) filed by Plaintiff J Paul Charlebois ("Plaintiff"). After considering the moving papers and oral argument, the Court GRANTS the Motion.

**I. Plaintiff Qualifies As A Party Entitled to Reasonable Attorneys' Fees Under Both Federal and California Statutes**

Plaintiff moves for fees under three statutes: (1) *Section 12205 of Title 42 of the United States Code*; [**2] (2) *California Civil Code Section 55*; and (3) *California Civil Procedure Code Section 1021.5*. Plaintiff qualifies as a party entitled to reasonable attorneys' fees under all three of these statutes.

**a. Federal *Section 12205* provides reasonable attorneys' fees to a prevailing party**

*HN1*[⬆] *Section 12205 of Title 42 of the United States Code* provides that a court "may allow the prevailing party" to receive attorneys' fees and costs from defendants in cases brought under the Americans with Disabilities Act of 1990 ("ADA"), *42 U.S.C. §§ 12101 et seq. See 42 U.S.C. § 12205*[1]; [*1113] *Barrios v. California Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002)*. The Ninth Circuit has reversed as an abuse of discretion the denials of attorneys' fees under *42 U.S.C. § 12205* where the party seeking fees satisfied the statutory criteria. *See e.g., Barrios v. California Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002)*; *Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 835, 844 (9th Cir. 2007)* (reversing denial of attorneys' fees under *42 U.S.C. § 12205* in action to improve wheelchair users'

access to hotel because statute's requirements were met by "court-enforceable settlement agreement" [**3] that "achieved [plaintiff's] objective of obtaining injunctive relief to make [defendant's hotel] accessible"). This is because a "prevailing plaintiff . . . should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Barrios, 277 F.3d at 1134 (9th Cir. 2002)*.

*HN3*[⬆] The Ninth Circuit has held that an ADA plaintiff is a prevailing party if she: (1) "achieve[s] a material alteration of the legal relationship of the parties"; and (2) that alteration is "judicially sanctioned." *Jankey v. Poop Deck, 537 F.3d 1122 (9th Cir. 2008)*. The second requirement can be met in many ways, including when a party enters into a legally enforceable agreement with the defendant. *Barrios v. California Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002)* (holding that plaintiff was "prevailing party" under *42 U.S.C. § 12205* because he could enforce a settlement against the defendant); *Carbonell v. I.N.S., 429 F.3d 894, 899 (9th Cir. 2005)* [**4] (noting that Ninth Circuit "is in agreement with the vast majority of other circuits" that hold that "a litigant can 'prevail' for the purposes of awarding attorney's fees as a result of judicial action other than a judgment on the merits or a consent decree").

The parties do not dispute that Plaintiff is the prevailing party based on the settlement he reached with Defendants.

**b. California *Section 55* provides reasonable attorneys' fees to a prevailing party**

*HN4*[⬆] *California Civil Code Section 55* provides that a "prevailing party . . . shall be entitled" to receive attorneys' fees and costs from defendants in cases brought under the California Disabled Persons Act ("CDPA"), *Cal. Civ. Code § 54*. *See Cal. Civ. Code § 55*[2]; *Barrios, 277 F.3d at 1137*.

---

[1] *HN2*[⬆] ] "In any action . . . commenced pursuant to this chapter, the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." *42 U.S.C. § 12205*; *see also 28 C.F.R. § 36.505*.

[2] *HN5*[⬆] ] "Any person who is . . . potentially aggrieved by a violation of *Section 54* or *54.1* of this code . . . may bring an action

993 F. Supp. 2d 1109, *1113; 2012 U.S. Dist. LEXIS 91069, **4

As with fees under _Section 12205_, the parties do not dispute that Plaintiff is the prevailing party under this California statute. See _Barrios, 277 F.3d at 1137_ (reversing denial of attorneys' fees because plaintiff was "prevailing party" under _Section 55_ given that settlement agreement gave plaintiff access to the baseball field and $10,000); cf. _Hubbard v. SoBreck, LLC (Hubbard II), 554 F.3d 742, 745 (9th Cir. 2009)_ (explaining that "the proof required [**5] to show a violation of the CDPA and of the ADA is identical" and so "a grant of fees on the California cause of action [under _Section 55_] is necessarily a grant of fees as to the ADA claim [under _Section 12205_]").

**c. California _Section 1021.5_ provides reasonable attorneys' fees to a successful party whose legal victory transcends her personal interest**

_HN6_[⬆] _California Civil Procedure Code Section 1021.5_ provides that "a court may [*1114] award attorneys' fees to a successful [3] party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, [**6] if any." _Cal. Civ. Proc. Code § 1021.5_. These requirements are satisfied, and thus an award under _Section 1021.5_ "is appropriate," if "the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in

the matter." _In re Conservatorship of Whitley, 50 Cal. 4th 1206, 1215, 117 Cal. Rptr. 3d 342, 241 P.3d 840, 846 (2010)_ (internal quotation marks omitted).

_HN8_[⬆] Courts have reversed as an abuse of discretion the denials of attorneys' fees under _Section 1021.5_ where the party seeking fees satisfied the statutory criteria. See e.g., _Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 835, 844 (9th Cir. 2007)_ (reversing denial of attorneys' fees under _Section 1021.5_ in action to improve wheelchair users' access to [**7] hotel because statute's requirements were met by "court-enforceable settlement agreement" that "achieved [plaintiff's] objective of obtaining injunctive relief to make [defendant's hotel] accessible"); _Hull v. Rossi, 13 Cal.App.4th 1763, 1765, 17 Cal. Rptr. 2d 457 (1993)_.

Each of the requirements of _Section 1021.5_ has been met in the instant case. First, this lawsuit has resulted in the enforcement of an important right affecting the public interest, namely, the right of wheelchair users to have affordable access to facilities. Second, there has been a significant benefit to a large class of persons because this lawsuit was successful in enforcing the civil rights of Plaintiff and the certified class of wheelchair users. See _Estrada v. FedEx Ground Package System, Inc., 154 Cal. App. 4th 1, 16-17, 64 Cal. Rptr. 3d 327 (2007)_ (plaintiff was entitled to attorneys' fees under _Section 1021.5_ where he "pursued this public interest class action not only for himself but on behalf of a class comprised of [defendant's] past and present drivers"). Third, because this action was for injunctive relief alone, no fees can be paid out of the recovery.

Finally, _HN9_[⬆] the necessity and financial burden requirement "seeks economic equalization of representation [**8] in cases where private enforcement is necessary." _In re Conservatorship of Whitley, 50 Cal. 4th at 1214_. This requirement asks the court to examine: (1) the "adequacy of public enforcement" (necessity prong); and (2) the

---

to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees." _Cal. Civ. Code § 55._

[3] _HN7_[⬆] ] Unlike the prevailing party fee-shifting statutes of federal law, "California law . . . does not require a judicially recognized change in the legal relationship between the parties as a prerequisite for obtaining attorney fees under Code of Civil Procedure _section 1021.5._" _Tipton-Whittingham v. City of Los Angeles, 34 Cal. 4th 604, 608, 21 Cal. Rptr. 3d 371, 101 P.3d 174 (2004)_ (quotation omitted).

993 F. Supp. 2d 1109, *1114; 2012 U.S. Dist. LEXIS 91069, **8

financial disincentives and incentives of private action (financial burden prong). *Id.* As with most lawsuits brought under the CDPA to improve disabled people's access to facilities, the necessity prong is satisfied because the California legislature recognized the *inadequacy* of public enforcement when it provided for a private right of action and the recovery of attorneys' fees under *Section 55*. *Donald v. [*1115] Cafe Royale, Inc., 218 Cal. App. 3d 168, 179, 266 Cal. Rptr. 804 (1990)* (extensively reviewing the repeated expansion of the CDPA's enforcement mechanisms and concluding that it "is plain [that] the Legislature's purpose in imposing increased penalties and additional enforcement methods is to guarantee compliance with equal access requirements."). Similarly, the financial burden prong is satisfied because the $18,000 that Plaintiff seeks as his enhancement fee is not sufficient incentive to take on this litigation, which spanned more than two years. *See Jones v. Pasta Pelican, Inc., C 05-04245 WHA, 2010 U.S. Dist. LEXIS 46506, 2010 WL 1465699 (N.D. Cal. Apr. 13, 2010)* [**9] (granting attorneys' fees in action to improve wheelchair users' access to restaurant under both *42 U.S.C. § 12205* and *Cal. Civ. Proc. Code § 1021.5* and rejecting defendant's argument that necessity and financial burden requirement was not met).

**d. Conclusion regarding entitlement to reasonable fees**

In sum, Plaintiff qualifies as a party entitled to reasonable attorneys' fees under all three of these statutes under which he moves for fees: (1) *Section 12205 of Title 42 of the United States Code*; (2) *California Civil Code Section 55*; and (3) *California Civil Procedure Code Section 1021.5*. Thus, the only dispute is whether the amount of fees sought is reasonable.

**II. Reasonableness of Fees**

*HN10*[⬆] A "reasonable" fee is a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil

rights case." *Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S.Ct. 1662, 1672, 176 L. Ed. 2d 494 (2010)* (discussing analogous civil rights statute). [4] All three statutes under which Plaintiff moves calculate the reasonableness of attorneys' fees using the "lodestar" method, which is obtained by multiplying the number of hours reasonably [**10] expended on litigation by a reasonable hourly rate. *See Blackwell v. Foley, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010)* (applying lodestar method to *Section 12205*, *Section 55*, and *Section 1021.5* in action to improve accessibility for physically disabled people); *Serrano v. Unruh (Serrano IV), 32 Cal. 3d 621, 643, 186 Cal. Rptr. 754, 652 P.2d 985 (1982)* (upholding lodestar method to calculate fees under *section 1021.5*); *Perdue, 130 S.Ct. at 1672* (explaining that, generally, the lodestar formula should be used to determine a reasonable figure for an award of attorneys' fees).

*HN11*[⬆] Under the Lodestar method, Plaintiff's [**11] attorneys are entitled to be compensated for "all hours reasonably spent on the matter." *Serrano IV, supra, 32 Cal. 3d at 635, 186 Cal. Rptr. 754, 652 P.2d 985*; *Sundance v. Municipal Court, 192 Cal.App.3d 268, 273-274, 237 Cal.Rptr. 269 (1987)*. The lodestar figure is presumed to represent an appropriate fee, but the Court may adjust the figure upward or downward to take into account special factors. *See Blum v. Stenson, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)*; *Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987)*. Adjustments to this presumptively reasonable amount may [*1116] then be made based upon the factors set forth in *Kerr v. Screen*

---

[4] Courts in the Ninth Circuit often apply the rules used in the fee-shifting civil rights statutes to motions for attorneys' fees in ADA and CDPA action under *42 U.S.C. § 12205* and *Cal. Civ. Code § 55*. *See e.g.*, *Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir.2002)* (applying the holding in *Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*, which governed attorneys' fees in civil rights actions under *42 U.S.C. § 1988*, to decision on attorneys' fees in ADA and CDPA action under *42 U.S.C. § 12205* and *Cal. Civ. Code § 55*); *see also Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1118 (9th Cir. 2000)*.

993 F. Supp. 2d 1109, *1116; 2012 U.S. Dist. LEXIS 91069, **11

*Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975)* to the extent that those factors are not reflected in the lodestar calculation. *See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028-29 (9th Cir. 2000).* The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) [**12] time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and 12) awards in similar cases. *See Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir.2006).*

Plaintiff seeks a total of $725,000 in attorneys' fees and costs, which is the maximum available under the parties' settlement agreement, as well as an $18,000 enhancement fee, which is within the range proscribed by the settlement agreement. *See* Reply at 24. The $725,000 figure is a reduction from the $1,165,448.08 to which Plaintiff argues that his attorneys ("Class Counsel") are entitled, that is, the sum of $1,118,280.56 in attorneys' fees and $47,167.52 in costs. *See* Reply at 24. The attorneys' fees are calculated by multiplying the $745,520.37 lodestar figure by a 1.5 multiplier. The $745,520.37 lodestar figure reflects a reduction from Plaintiff's original figure based on Plaintiff's acquiesce to Defendants' criticisms of some hours. *See* Feldman Decl. at ¶¶ 11-12; DeSimone Reply Decl. at ¶¶ 21-23. [**13] The following chart reflects how Plaintiff calculated Class Counsel's figures and also indicates the bar admission year, rates, total hours, and fees incurred by each biller involved in litigating this action:

[*1117]

*Go to table1*

*Go to table2*

*See* [**14] DeSimone Reply Decl. Ex. K. [5]

[*1118] **a. Reasonableness of Class Counsel's fee rates**

*HN12*[⬆] Both the United States Supreme Court and California Supreme Court have held that fee awards to public interest attorneys who do not charge their clients—such as Class Counsel—are "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984); Folsom v. Butte County Ass'n of Govt's, 32 Cal.3d 668, 683-84, 186 Cal. Rptr. 589, 652 P.2d 437 (1982)* (same). "The proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel." *Trevino v. Gates, 99 F.3d 911, 925 (9th Cir.1996); Blum, 465 U.S. at 895, fn. 11* ("[R]ates charged in private representations [**15] may afford relevant comparisons.").

Plaintiff has established the reasonableness of Class Counsel's fee rates through the declarations by Class Counsel and three other attorneys who practice civil rights litigation in Southern California. *See United Steelworkers of Am. v. Phelps Dodge Co., 896 F.2d 403, 407 (9th Cir. 1990)* ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."); *Bouman v. Block, 940 F.2d 1211, 1235 (9th Cir. 1991)* (the submission of "declarations stating that the rate was the prevailing

---

[5] Plaintiff's Motion originally reduced the lodestar figure to $712,995.63 as a sort of olive branch to Defendants. *See* DeSimone Decl. at ¶ 54. However, when Defendants Opposition refused to acknowledge that this reduction demonstrated any business judgment by Plaintiff and instead sought to further reduce Class Counsel's fees, Plaintiff withdrew some of these reductions and sought $745,520.37.

993 F. Supp. 2d 1109, *1118; 2012 U.S. Dist. LEXIS 91069, **15

market rate in the relevant community [was] ... sufficient to establish the appropriate rate for lodestar purposes"). In addition, Plaintiff has established the reasonableness of Class Counsel's fee rates through comparison with other cases. *See Nadarajah v. Holder, 569 F.3d 906, 917 (9th Cir. 2009)* (affirming award of attorneys' fees at rate of $500 per hour where party had submitted a declaration describing her experience and attached copies of fee awards in the same geographical [**16] area where counsel had comparable experience).

For example, *Californians for Disability Rights v. Cal. DOT* (*Caltrans*) is a case from 2010 in which the court awarded attorneys' fees in an action to improve accessibility for people with mobility disabilities. *See No. C 06-05125 SBA (MEJ), 2010 U.S. Dist. LEXIS 141030, *3 (N.D.Cal. Dec. 13, 2010)*. The court found reasonable $730/hour for a 1985 graduate and $740/hour for a 1984 graduate, which is $35/hour greater than the rate requested by Mr. DeSimone, a 1985 graduate. *Id. at *39*. Similarly, the court found reasonable $660/hour and $650/hour for a 1991 and 1992 graduate respectively, while Mr. Seplow, a 1990 graduate, is only requesting $630/hour. *Id.* Likewise, an attorney with six years experience, the same number of years of practice as Ms. Canning, was awarded $500/hour, and a five year attorney was awarded $475. *Id.* By contrast, Ms. Canning is only requesting $450/hour. Given that the *Caltrans* rates were approved in 2010 and it is now 2012, Class Counsel's requested rates are below the high end of the market. *See also Pereira v. Ralph's Grocery Co., CV 07-841 PA(FFMX), 2010 U.S. Dist. LEXIS 142802, 2010 WL 6510346, *1, 7 (C.D. Cal. July 1, 2010)* (awarding attorneys' [**17] fees under ADA and CDPA and finding reasonable fee rates of $700/hour in class action settlement); *Elder v. Nat'l Conference of Bar Examiners, C 11-00199 SI, 2011 U.S. Dist. LEXIS 102205, 2011 WL 4079623, *1, 4 n.4 (N.D. Cal. Sept. 12, 2011)* (awarding attorneys' fees under ADA and finding reasonable fee rates of $730/hour for a 1985 graduate, $640/hour for a 1993 graduate, $535/hour for a 2003 graduate).

Because Plaintiff established reasonableness of Class Counsel's fee rates, the burden shifts to Defendants to rebut [*1119] with evidence challenging the accuracy and reasonableness of the rates. [6] *See Gates, 987 F.2d at 1397-98*. Defendants argue that Class Counsel's fee rates are unreasonable because: (1) one of the three attorneys who submitted declarations in support of Class Counsel is not an appropriate comparator; (2) some of the firms to which Class Counsel compares itself are not peer firms; (3) one court in a different case decided more than four years ago reduced the fee rate of one member of Class Counsel; and (4) Defendants' attorneys billed at lower rates than Class Counsel. All four arguments fail as a matter of law to meet Defendants' burden on rebuttal.

### i. Sobel is valid comparator to Class Counsel

---

[6] Class Counsel requested compensation for the work in [**18] this case at their regular hourly rates for the year 2012. This is appropriate because, *HN13*[⬆] for the fee award to be reasonable, it must be based on current, rather than historic, hourly rates. *Missouri v. Jenkins, 491 U.S. 274, 284, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)* (court may account for delay in payment through use of current rates); *Cruz ex rel. Cruz v. Alhambra Sch. Dist., 601 F. Supp. 2d 1183, 1195 (C.D. Cal. 2009)*. Furthermore, while the currently requested rates reflect an increase from Class Counsel's 2011 rates of up to, such an increase is justified by comparable increases in the market. *See Coles v. City of Oakland, No. C03-2961 TEH, 2007 U.S. Dist. LEXIS 100533, 2007 WL 39304, *7 (N.D. Cal. Jan. 4, 2007)* (rejecting defendants' argument that rate increases should not surpass the rate of inflation and stating "the focus of the rate analysis is to ensure that fees are awarded at 'prevailing market rates in the relevant community,' and such rates may be affected by factors other than inflation, such as attorneys' additional years of experience or changes in the legal market") (quoting *Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)*; *Parker v. Vulcan Materials Co. Long Term Disability Plan, No. EDCV 07-1512 ABC (OPx), 2012 U.S. Dist. LEXIS 36724, 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012)* [**19] (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice"); *LaPeter v. Canada Life Ins. Co. of Am., No. CV06-121-S-BLW, 2009 U.S. Dist. LEXIS 40263, 2009 WL 1313336 *3 (D. Idaho May 11, 2009)* ("It is typical for rates to increase on a yearly basis and, also, for associates' and paralegals' rates to increase as they gain more experience.").

993 F. Supp. 2d 1109, *1119; 2012 U.S. Dist. LEXIS 91069, **19

Plaintiff's Motion included three declarations from lawyers who practice in the Southern California region attesting to the reasonableness of Class Counsel's fee rates. All three declarations are from litigators in class action litigation and civil rights law with comparable experience to Class Counsel. However, Defendants argue that one of these attorneys, Carol Sobel, is not an appropriate comparator because she "specializes in _First Amendment_ Rights and police litigation," which is the "completely different area of law" from the disability rights law "at issue in this case." [**20] Defendants argue, without authority, that such specialization renders Sobel inapposite because "the relevant market in this case is comprised of attorneys in Los Angeles or Orange County who specialize in disability rights cases under Titles II and 11 of the ADA." Opp'n at 11.

First, Defendants are incorrect as matter of law that the relevant market is limited only to attorneys who specialize in the specific disability rights laws at issue here. Defendants' unsubstantiated argument is contradicted by the Federal and California fee-shifting statutes at issue here, which "specifically offer[] statutory attorney fees as incentive to encourage attorneys to handle these important cases." _Blackwell v. Foley, 724 F. Supp. 2d 1068, 1077 (N.D. Cal. 2010)_ (discussing ADA and CDPA); _Donald v. Cafe Royale, Inc., 218 Cal. App. 3d 168, 179, 266 Cal. Rptr. 804 (1990)_ ("[T]he [California] Legislature's [*1120] purpose in imposing increased penalties and additional enforcement methods is to guarantee compliance with equal access requirements."). This legislative purpose is thwarted if the relevant market is limited only to disability rights specialists; where the prevailing market rate for non-specialists is greater than the rate [**21] for disability rights specialists, non-specialists will lack the incentive to litigate these cases and thus the pool of available attorneys will shrink. Perhaps for this reason, Congress did not limit the relevant market as narrowly as Defendants would wish; in fact, in other fee-shifting statutes, Congress expressly stated it "intended that the amount of fees awarded . . . be

governed by the same standards which prevail in other types of complex Federal litigation, such as antitrust cases." _City of Riverside v. Rivera, 477 U.S. 561, 575, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986)_ (internal quotations omitted). [7]

Alternatively, even if Defendants were correct that _one_ of three declarations provides [**22] an inapt comparator, the Court can not reduce Class Counsel's fee rates because the _other two_ declarations alone satisfy Plaintiff's burden to show the reasonableness of Class Counsel's fee rates. Defendants' opposition is entirely silent as to these other two declarations in support of Class Counsel's fees. Such silence is insufficient to meet Defendants' burden to rebut the reasonableness of these rates with specific evidence. _See Gates, 987 F.2d at 1397-98_.

In sum, the Court is not persuaded by Defendants' argument that Class Counsel's rate should be reduced simply because one of three comparators is not a disability rights specialist.

## ii. Attorneys at large, prestigious firms are valid comparators to Class Counsel

Defendants argue that the fee rates at some of the firms to which Class Counsel compares itself are inappropriate because these firms are "the most prestigious international law firms in the country," and thus have "the highest hourly rates," whereas Class Counsel work at a 12-attorney boutique. Opp'n at 11. Defendant submitted two declarations from attorneys at elite firms that aver that their fee rate is lower than some of the fee rates of Class Counsel. Defendants offer [**23] no authority to explain why the size of a firm or the firm's reputation renders comparisons to Class Counsel

_____

[7] Furthermore, Defendants' rule is troubling as a matter of policy. Historically, civil rights activists and public interest attorneys have benefitted from a cross-pollination of ideas between various social movements; indeed, the incorporation of fee-shifting statutes in the ADA can be ascribed to their success in other civil rights statutes. Thus, the Court is highly skeptical that the Federal or California legislatures intended to create a fee award system that ghettoized the disability rights field within the civil rights law.

993 F. Supp. 2d 1109, *1120; 2012 U.S. Dist. LEXIS 91069, **23

inappropriate.

Courts have rejected similar arguments under similar fee-shifting statutes. *See e.g., Cruz ex rel. Cruz v. Alhambra Sch. Dist., 601 F. Supp. 2d 1183, 1194-95 (C.D. Cal. 2009)* (rejecting defendant's argument "that it is inappropriate to determine rates for Plaintiffs' attorneys using data from large law firms because such firms generally do work in areas of federal litigation that garner higher rates than those charged for civil rights litigation"). The reasoning is two-fold. First, *HN14*[↑] the Supreme Court and Ninth Circuit have expressly endorsed comparisons to "*lawyers* of reasonably comparable skill, experience, and reputation" and have never required prevailing party's counsel to *also* prove that their *firm* is the same size or has the same level of prestige as that of comparator attorneys. *See Blum v. Stenson, 465 U.S. 886, 896 n. 11, [*1121] 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)* (emphasis added); *Trevino v. Gates, 99 F.3d 911, 925 (9th Cir.1996)* ("[R]ates charged by private *attorneys* in the same legal market as prevailing counsel.") (emphasis added). Indeed, a rule requiring a comparison of firms would be **[**24]** artificially depress attorney fee awards, as few civil rights firms can afford to employ hundreds of associates given the uncertainty of contingency-fee litigation. Second, attorneys at large, prestigious law firms are valid comparators because they do, in fact, sometimes litigate civil rights cases; indeed, courts have awarded attorneys fees to attorneys at Skadden Arps, one of the firms to which Class Counsel compares themselves, in disabilities rights cases. *See e.g., Californians for Disability Rights v. Cal. DOT (Caltrans No. C 06-05125 SBA (MEJ), 2010 U.S. Dist. LEXIS 141030, *3 (N.D.Cal. Dec. 13, 2010)* (finding reasonable a $730/hour fee awarded to a Skadden Arps attorney in an action to improve accessibility for people with mobility disabilities).

Moreover, Class Counsel's firm reputation *is* prestigious and thus on par with its comparator firms. Class Counsel's firm is a major player in litigating cutting edge international human rights

cases, as exemplified by law partner Paul Hoffman's February 2012 argument before the U.S. Supreme Court in *Kiobel v. Royal Dutch Petroleum*, Case No.1 0-1491. *See* DeSimone Reply Dec at ¶19. One of the members of Class Counsel, DeSimone, has been **[**25]** named by the *Daily Journal* among the Top 50 Employment Lawyers in the State of California, inclusive of lawyers from top international law firms, for three years in a row. *Id.*

Alternatively, even if Defendants were correct that attorneys from some law firms were inapt comparators, the Court can not reduce Class Counsel's fee rates because the declarations from three civil rights attorneys alone satisfy Plaintiff's burden to show the reasonableness of Class Counsel's fee rates. As noted previously, Defendants' opposition is entirely silent as to two of these declarations. Such silence is insufficient to meet Defendants' burden to rebut the reasonableness of these rates with specific evidence. *See Gates, 987 F.2d at 1397-98.*

In sum, the Court is not persuaded by Defendants' argument that Class Counsel's rate should be reduced simply because some of the fee rates cited in support of Class Counsel's fees are from attorneys working at firms of a different size or reputation than Class Counsel's firm.

### iii. A different court's decision to reduce DeSimone's fees in a different case decided more than four years ago is not sufficient evidence to reduce DeSimone's fees in this case

Defendants argue **[**26]** that this Court should reduce the fee rate of one member of Class Counsel, DeSimone, because one state court in a different case decided more than four years ago reduced DeSimone's fee rate. Defendants rely on *Benham v. S&J Sec. & Investigation*, in which a California Court of Appeals held that the "trial court did not act arbitrarily or capriciously in setting rates" of $425/hour rather than DeSimone's requested $600/hour because the "trial court

993 F. Supp. 2d 1109, *1121; 2012 U.S. Dist. LEXIS 91069, **26

explained that the rate determinations were based on the simplicity of the facts and the lower level of expertise required in this case." *2010 Cal. App. Unpub. LEXIS 1616, *29, *33 (Cal. App. 2d Dist. Mar. 8, 2010)*.

First, *HN15*[↑] Defendants' argument to reduce fee rates to the rates awarded in cases prior to the action for which fees are sought fails as a matter of law because, as courts have recognized when rejecting identical arguments, such "cases do not [*1122] necessarily reflect the *prevailing* market rate, which is the appropriate standard." *Salinas v. Rite Aid Lease Mgmt. Co., CV-10-7499-SVW-FMO, 2011 U.S. Dist. LEXIS 36093, 2011 WL 1107213, *1-2 (C.D. Cal. Mar. 17, 2011)* (awarding attorneys' fees in ADA action to improve wheelchair users' access to chain store). While *past* fee [**27] rates may be useful evidence to show a *floor* below which a court's fee calculations should not drop, past fee rates in no way support the conclusion that a court should *reduce* the fees in the present case to the rates awarded in the past. Defendants' logic would produce the absurd result of fee rates flat lining at the rate set by the first court to award fees. In fact, *HN16*[↑] courts routinely recognize that fee rates increase over time based on a variety of factors. *See e.g., Parker v. Vulcan Materials Co. Long Term Disability Plan, No. EDCV 07-1512 ABC (OPx), 2012 U.S. Dist. LEXIS 36724, 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012)* (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice"); *LaPeter v. Canada Life Ins. Co. of Am., No. CV06-121-S-BLW, 2009 U.S. Dist. LEXIS 40263, 2009 WL 1313336 *3 (D. Idaho May 11, 2009)* ("It is typical for rates to increase on a yearly basis and, also, for associates' and paralegals' rates to increase as they gain more experience.").

Alternatively, even [**28] if Defendants were correct that fee rates could be reduced to past rates, the Court can not reduce Class Counsel's fee rates because Defendants' evidence that one court reduced DeSimone's fee rate four years ago is insufficient to defeat DeSimone's evidence that other courts have awarded him higher fee rates. [8] DeSimone's declaration provides the names and case numbers of five cases from more recent years—at least two of which are from this Court's district—awarding DeSimone an hourly rate of $600 to $650 per hour. *See* DeSimone Decl. ¶ 36 (citing two 2009 cases awarding $600/hour and $625/hour; a 2010 case and two 2011 cases awarding $650/hour). [9] It is Defendants' burden to rebut Plaintiff's evidence, and this burden is not met given Defendants' failure to distinguish DeSimone other five cases.

[*1123] In sum, the Court is not persuaded by Defendants' argument that DeSimone's fee rate should be reduced simply because one state court in

---

[8] The rates approved in *Benham* were based on 2008 rates, when the trial court originally granted Plaintiffs fees, not 2012 rates—nor even, as Defendants suggest, the rates when the matter was up on appeal in 2010. *See* DeSimone Reply Decl. at 20.

[9] The Court overrules Defendants' objection to DeSimone's declaration. Defendants assert that a declaration under penalty of perjury from an attorney who [**29] was counsel of record on a case in which he and his firm were awarded attorneys fees by the Court, and who has personal knowledge of the hourly rate awarded, somehow is not competent to set forth the hourly rate. Defendants are wrong. DeSimone's declaration, which is based on personal knowledge, properly sets forth the basis for the requested hourly rates for himself and his co-counsel, including the name and case numbers. His declaration is not hearsay and satisfies all of the necessary foundational requirements for this Court to consider the requested hourly rate. Further, the "best evidence rule" deals with the contents of a written document and simply does not apply to the declaration of an attorney with personal knowledge of the rates he and his firm were awarded by the Court. There is simply no requirement that Plaintiff has to clutter the docket by attaching all of the actual orders setting forth the hourly rates awarded in cases in which DeSimone and his firm were counsel of record. *See United Steelworkers of Am. v. Phelps Dodge Co., 896 F.2d 403, 407 (9th Cir. 1990)* (*HN17*[↑]) "Affidavits of the plaintiffs' attorney . . . regarding prevailing fees in the community, and rate determination [**30] in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

993 F. Supp. 2d 1109, *1123; 2012 U.S. Dist. LEXIS 91069, **30

a different case decided more than four years ago reduced DeSimone's fee rate.

### iv. The lower fee rates of Defendants' attorneys are not valid bases for reducing Class Counsel's fee rates

Defendants argue that Class Counsel's fee rate should be reduced because Defendants' attorneys billed at lower rates than Class Counsel. Defendants' argument fails as a matter of law because Defendants' attorneys' hourly rate charged to clients is not the standard by which Class Counsel's fees are measured. *See Trevino, supra, 99 F.3d at 925* (holding defense counsel's rates to be an improper starting point in determining plaintiff counsel's reasonable hourly rate). *See also EEOC. v. Harris Farms, Inc., 2006 U.S. Dist. LEXIS 36903, 2006 WL 1028755, *19 (E.D. Cal. Mar. 1, 2006)* (court declined to compare a plaintiff attorney's requested hourly rate to the hourly rate of a defense attorney). Non-contingent rates such as those charged by Defendants' attorneys do not **[**31]** account for the inherent risks associated with contingent work and delay in payment. *See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 946-47 (9th Cir. 2007)*. Furthermore, Defendants' attorneys have not shown that their experience or reputation is comparable to that of Class Counsel.

### v. Conclusion regarding fee rates

In sum, the Court rejects as a matter of law all of Defendants' arguments to reduce Class Counsel's fee rates. Accordingly, the Court holds that Class Counsel's fee rates are reasonable.

### b. Reasonableness of hours worked

*HN18*[↑] The court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008)*; *Blackwell v. Foley, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010)* ("An attorney's sworn testimony that, in fact, [she] took the time claimed . . . is evidence of considerable weight on the issue

of the time required."). To reduce the number of hours worked, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Blackwell, 724 F. Supp. 2d at 1081* (awarding attorneys fees under the same three statutes at issue here, *Section 12205*, **[**32]** *Section 55*, and Section 1021.5). This is true because "the purposes of the [fee-shifting] statutes will not be met" unless Plaintiff's attorneys are "reasonably compensated for all their time." *Id.; Moreno, 534 F.3d at 1112* ("It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee.").

Plaintiff's moving papers and declarations show that Class Counsel efficiently staffed this matter by primarily assigning one associate to handle the bulk of the discovery and motion drafting with oversight by an experienced partner. *See* DeSimone Decl. at ¶ 54; Canning Decl. at ¶ 9. In addition, Class Counsel exercised billing judgment by reducing the total billing for conferences by 25% and not billing at all for the 480 hours worked by law clerks to account for any inefficiencies. *See* DeSimone Decl. at ¶ 54; Canning Decl. at ¶ 9; Ex. K DeSimone Reply Decl. at ¶ 22 (reduction of time on complaint), ¶ 23 (conference time reduction).

*HN19*[↑] Because Plaintiff established reasonableness of Class Counsel's hours, the burden shifts to Defendants to rebut **[**33]** with evidence challenging the accuracy and reasonableness **[*1124]** of the hours. *See Gates, 987 F.2d at 1397-98*. Defendants, relying primarily on the conclusions of their fee consultant, [10] argue that Class Counsel's hours are unreasonable because: (1) hours worked by one member of Class Counsel should not be paid because he is not counsel of record; (2) hours billed on the complaint and on a summary judgment motion that was never filed are excessive; and (3) hours worked by one attorney

---

[10] Defendants' fee consultant only reviewed billing records through October 18, 2011.

Page 14 of 17

993 F. Supp. 2d 1109, *1124; 2012 U.S. Dist. LEXIS 91069, **33

reviewing another's work or on internal communications are duplicative. All three arguments fail to meet Defendants' burden on rebuttal.

### i. Feldman's hours can not be reduced simply because he is not counsel of record or did not make an appearance

Defendants argue that the hours worked by one member of Class Counsel, Feldman, should not be paid because he is not counsel of record and has "never made a single appearance in this case." Opp'n at 13. Defendants' argument fails as a matter of law because they cite no authority and precedent supports a contrary conclusion. In *Invision Media Services*, for example, the Ninth Circuit overturned [**34] the lower court and awarded fees to an attorney who had not made a formal appearance prior to the fee motion. *Invision Media Servs. v.Glen J Lerner, 175 Fed.Appx. 904, 907 (9th Cir. Apr. 23, 2006)*. **HN20**[⬆] The court held that there was "no basis for requiring an attorney who actually contributed to the work product of another attorney" to be required to "enter appearances." *Id.; see also Wells Fargo Bank, N.A. v. Jones, CIV.A. 07-3599, 2009 U.S. Dist. LEXIS 35185, 2009 WL 911011 (E.D. La. Mar. 31, 2009)* (following *Invision Media* to award attorneys fees for work done by attorney "prior to formal enrollment as counsel"). Similarly, other courts have found that the hours of contract attorneys—who, like Feldman, are not counsel of record— nonetheless merit inclusion in the lodestar hours. *See In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 272 (D.N.H. 2007)* (like paralegal time, it is "appropriate to bill a contract attorney's time at market rates and count these time charges toward the lodestar."). [11]

### ii. Hours worked on the complaint and summary

judgment motion were not excessive

Defendants argue that the hours worked on the complaint and on a summary judgment motion that was never filed are excessive and thus should be excluded from the lodestar figure.

Defendants argue that the 78 hours billed on the complaint are excessive because the complaint contained only 3 pages of facts and five causes of action. Defendant cites two cases which reduced the hours worked on the complaint: *Johnson v. Curtis O. Barnes, PC, 2010 U.S. Dist. LEXIS 143286 (C.D. Cal. Dec. 13, 2010)* and *Cyr v. Reliance Std. Life Ins. Co., 2008 U.S. Dist. LEXIS 110336 (C.D. Cal. Jan. 16, 2008)*.

Plaintiff has reduced by half the hours devoted to researching and drafting the complaint. *See* Reply at 20 n.14; DeSimone Reply Decl. Ex. K. Even if Plaintiff had not done so, the Court declines to follow Defendants' cases. Frankly, the Court suspects that several of the complaints it dismisses every week fail to state a claim because attorneys spend too *little* time researching the grounds for their [*1125] case; the Court sees no reason why it should punish the attorney that researches the law and facts before putting paper [**36] to pen. Furthermore, Defendants'cases are distinguishable. Unlike the present case, *Cyr* was not a class action and did not involve the substantive law at issue here. *Cyr, 2008 U.S. Dist. LEXIS 110336 at *16* (reducing hours spent drafting an ERISA complaint). *Johnson*, also unlike the present case, "presented a narrow, straight-forward factual and legal issue" and the complaint was only eight pages. *Johnson, 2010 U.S. Dist. LEXIS 143286 at *5-6*.

Defendants also argue that the hours worked on the summary judgment motion should be reduced because the motion was never filed. However, **HN21**[⬆] extensive authority supports awarding fees for time spent on unfiled motions. *See Marbled Murrelet v. Pacific Lumber Co., 163 F.R.D. 308, 327 (N.D. Cal. 1995)* (rejecting defendant's

---

[11] The Court need not address Defendants' other argument that 2.6 hours billed by Feldman should not be counted due to a lack of work description because Plaintiff has withdrawn those hours. *See* Feldman Decl. [**35] at ¶¶ 11.

993 F. Supp. 2d 1109, *1125; 2012 U.S. Dist. LEXIS 91069, **36

argument that plaintiffs should not be awarded fees for time spent on a second amended complaint and possible motion for reconsideration, both of which were never filed, where the court found that it had no reason to doubt plaintiffs' representation that the work was reasonably related to the case at hand); *ExperExchange, Inc. v. Doculex, Inc., No. C-08-03875 JCS, 2010 U.S. Dist. LEXIS 54530, 2010 WL 1881484, *9 (N.D. Cal. May 10, 2010)* (awarding party fees **[**37]** for time spent preparing a *Daubert* motion that was never filed and stating "[t]he fact that the motion was not, ultimately, filed, does not mean that the time spent preparing the motion was unreasonable."); *Rux v. Starbucks Corp., 2007 U.S. Dist. LEXIS 30180, 2007 WL 1098550, *3-4 (E.D. Cal. Apr. 12, 2007)* (granting attorneys' fees for time spent drafting plaintiff's portion of a related joint statement regarding a discovery dispute which was ultimately not filed in light of defendant's last minute agreement to produce the requested deponent).

Furthermore, Defendants neglect to recognize that Defendants choose to negotiate a settlement days before the deadline for filing summary judgment motions; if Defendants had wished to not pay Class Counsel's fees, Defendants could have settled earlier. In addition, Plaintiff avers that it was only after Class Counsel met and conferred with Defense counsel on the motion for summary judgment that Defendants agreed to set a mediation date. Therefore, Class Counsel had no assurance that the matter would settle. Given the looming motion cut-off deadline, Class Counsel was diligent in representing the certified class by preparing a motion. In sum, the Court is not persuaded by **[**38]** Defendants' argument to reduce the fees incurred in writing the complaint or summary judgment motion.

### iii. Hours billed for reviewing another's work or on internal communications were not duplicative

Defendants argue that the hours billed by one attorney reviewing another's work or on internal communications are duplicative and thus should be excluded from the lodestar figure. As the Court previously noted, this was a leanly-staffed case where more than 75% of the hours were billed by only two attorneys. Thus, the Court declines to reduce the hours simply because Class Counsel kept each other informed about the case and double-checked each other's work; indeed, many motions this Court denies would have benefitted from a second read and more strategizing by the attorneys involved.

### iv. Conclusion regarding hours

In sum, the Court rejects all of Defendants' arguments to reduce Class Counsel's hours. Accordingly, the Court holds that Class Counsel's hours are reasonable. **[*1126]** Furthermore, the Court notes that Class Counsel's hours are reasonable because they litigated this case for two years, after class certification and up to the eve of summary judgment. Courts have awarded significant fees for **[**39]** success achieved at much earlier stages of litigation. *See Elder v. Nat'l Conference of Bar Examiners, C 11-00199 SI, 2011 U.S. Dist. LEXIS 102205, 2011 WL 4079623, *4, 4 n.4 (N.D. Cal. Sept. 12, 2011)* (awarding $215,361.05 in attorneys' fees under *Section 12205* for merely obtaining a preliminary injunction); *Pereira v. Ralph's Grocery Co., CV 07-841 PA(FFMX), 2010 U.S. Dist. LEXIS 142802, 2010 WL 6510346, *1, 7 (C.D. Cal. July 1, 2010)* (awarding $649,037 in attorneys' fees under ADA and CDPA in class action settlement and finding reasonable multiplier that increased "by two-thirds of the lodestar").

### c. Conclusion

Under the parties' settlement agreement, Class Counsel can not recover more than $725,000 in attorneys' fees and costs. Because the Court concludes that the lodestar figure of 745,520.37 in attorneys' fees and $47,167.52 in costs is reasonable, the Court need not consider additional arguments by Plaintiff to increase this figure by a

993 F. Supp. 2d 1109, *1126; 2012 U.S. Dist. LEXIS 91069, **39

multiplier. [12]

In addition, the Court finds Plaintiff's enhancement award of $18,000 to be reasonable.

## IV. Disposition

For the foregoing reasons, the Court GRANTS Plaintiff's motion. The Court AWARDS: (1) Class Counsel $725,000 in attorneys' fees and costs; and (2) Plaintiff $18,000 as an enhancement award.

DATED: May 30, 2012

/s/ David O. Carter

DAVID O. CARTER

UNITED       STATES       DISTRICT       JUDGE

---

[12] Although Defendants offer post-hoc criticisms of the settlement agreement that appear to question hours billed given the lack of complexity of this case, this argument is too underdeveloped to constitute a basis for reducing Plaintiff's fees under the *Kerr* factors. Furthermore, courts have **[**40]** awarded fees even where the case was incredibly simple and straightforward. *Hull v. Rossi, 13 Cal. App. 4th 1763, 1769, 17 Cal. Rptr. 2d 457 (1993)* (reversing denial of attorneys' fees under *Section 1021.5* even though lower court was "correct" that the opponent to the party seeking fees offered arguments that were "minor, inconsequential and a 'piffle'" because the lower court "abused its discretion in holding that any court would have so found [for the successful party] without the aid of [movant's] attorneys").

S-072

993 F. Supp. 2d 1109, *1126; 2012 U.S. Dist. LEXIS 91069, **40

**Table1** (*Return to related document text*)

| Attorney/Legal Worker | Bar Admittance: | Rate: | Hours: | Fees: | % of Fees: |
|---|---|---|---|---|---|
| V. James DeSimone | 1985 | $695.00 | 401.20 | $278,834.00 | 35% |
| Michael D. Seplow | 1990 | $630.00 | 68.80 | $43,344.00 | 5% |
| Amanda Canning | 2006 | $450.00 | 724.30 | $325,935.00 | 41% |
| Eugene Feldman[1] | 1985 | $600.00 | 136.70 | $82,020.00 | 10% |
| Courtney Abrams | 2009 | $375.00 | 19.00 | $7,125.00 | 1% |
| Menaka Fernando | 2010 | $325.00 | 6.10 | $1,982.50 | 0.25% |
| David 5arnoff | 2005 | $460.00 | 15.50 | $7,130.00 | 1% |
| Paralegals | n/a | $150.00 | 337.55 | $50,632.50 | 6% |
| Law Student Interns | n/a | $200.00 | 480.00 | N/A | 0% |
| | | | **Total Hours:** | **Total Fees:** | |
| | | | **1709.15** | **$797,003.00** | |

**Table1** (*Return to related document text*)

---

**Table2** (*Return to related document text*)

| | |
|---|---|
| Internal Conference Time ("CT") Fees Pre-Mediation: | **$107,952.50** |
| Internal CT Fees Post-Mediation: | **$14,755.00** |
| Total CT Fees: | **$122,707.50** |
| 25% Billing Judgment Reduction: | **$30,676.88** |
| Total CT Fees after 25% Billing Judgment Reduction: | **$92,030.63** |
| Judgment Billing Reduction of 100% of Law Clerk Hours: | **$96,000.00** |
| Total Complaint Time Fees: | **$40,981.50** |
| 50% Billing Judgment Reduction: | **$20,490.75** |
| Total Complaint Time Fees after 50% Billing Judgment Reduction: | **$20,490.75** |
| Total Reduction: | **$147,167.63** |
| Total Percent Reduction: | **18.47%** |
| Total Fees with Billing Judgment: | **$745,835.37** |

**Table2** (*Return to related document text*)

---

**End of Document**

# EXHIBIT "5"

**DECLARATION OF CAROL A. SOBEL**

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice before the Supreme Court of the State of California and the United States District Court for the Central District of California.   This declaration is submitted in support of the attorney fees requested by Plaintiff's counsel in the above-captioned matter.   I have personal knowledge of the facts below and if I were called to testify to those facts would do so competently.

2.      I graduated from law school in 1978 and was admitted to practice in December of that same year.   Until April of 1997, I was employed by the ACLU Foundation of Southern California ("ACLU").   Throughout the time that I was an attorney at the ACLU, my primary areas of litigation were First Amendment rights and police litigation.   For six years prior to 1997, I held the position of Senior Staff Counsel in the legal department. A true and correct copy of my résumé is attached at Exhibit 1.   I have received numerous awards for my work in the area of First Amendment litigation and, more recently, on behalf of homeless persons.   I have been qualified as an expert in ethics and the practices of public-interest legal groups, including once before the State Bar and once in the Los Angeles Superior Court.

3.      My billing rate for 2013 is $825 an hour.   In 2012, I billed my time at $795 an hour. I was not awarded fees in a contested motion at that rate; however, I was retained and paid at that rate in a case presently in federal court.   In 2012, I was awarded fees at my 2011 rate of $750 an hour by the Los Angeles Superior Court in a contested fee motion in a police misconduct case.   A true and correct copy of the fee award in that case, *Garrett v. City of Los Angeles*, is attached at Exhibit 2.   In 2010, I was awarded fees at $725 an hour by Judge Otero of the Central District of California in a contested fee motion.   The case, *Long Beach Area Peace Network v. City of Long Beach*, involved a First Amendment challenge to a permitting scheme.   *See* 574 F.3d 1011 (9th Cir. 2009).   In 2009, I was awarded fees at $710 an hour in two contested fee motions in the district court, first by Judge Pregerson and then by Judge Matz in a hybrid class action.   *See Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (CD Cal. 2009) and *MIWON v. City of Los Angeles*, CV 07-7032 AHM.   In 2008, in another contested fee motion in the district court, I was

1    awarded fees at the rate of $695 an hour by Judge Real. *See Jones v. City of Los Angeles*, cv 03-

2    1142 R.  *See* 444 F.3d 1118 (2006), *vacated per settlement* 505 F.3d 1006 (9th Cir. 2007).  This

3    matter is presently on appeal on the issue of entitlement to fees, but there is no challenge to the

4    rates awarded by the court.

5         4.    During the time that I was Senior Staff Counsel at the ACLU, I was responsible for

6    preparing many of the fee motions in cases where the ACLU represented the prevailing party.

7    Because the ACLU does not bill its clients on an hourly basis for its services, I was required to

8    obtain information to establish reasonable market rates for the ACLU lawyers.  It was my practice

9    to obtain current billing rates for lawyers of comparable skill and experience at several firms

10   throughout the Los Angeles legal market.  I did this on an annual basis, telephoning partners who

11   were familiar with the ACLU lawyers in question so that they could make an informed judgment

12   about the comparable skill levels of the attorneys at their firms whose rates were used to establish

13   ACLU billing rates.  At the time that I contacted these individuals, I was aware that the partners

14   had been personally involved in pro bono litigation with the ACLU.  Since these firms had worked

15   directly with the ACLU lawyers for whom I sought to establish a market billing rates, they were

16   able, based on personal knowledge, to assess the skill and experience of the ACLU lawyers and

17   make a comparison to lawyers in their respective firms.

18        5.    Since entering private practice, I have continued to survey firms each year to obtain

19   relevant comparisons for billing rates since I do not "charge" my clients for representation as I

20   continue to do the same type of civil liberties and civil rights litigation I did when I was employed

21   at the ACLU.  My cases almost exclusively are brought on behalf of low-income individuals, who

22   are unable to afford legal representation.  So, any recovery of fees is contingent upon my clients

23   prevailing in the litigation.  To keep current with market rates, I generally survey annual billing

24   rates at firms the first time in each year I prepare a fee motion or enter into settlement discussions

25   regarding fees.  As part of my survey, I make it a point to consult with attorneys in both larger law

26   firms engaged in complex litigation, such as Loeb & Loeb, as well as smaller boutique civil rights

27   law firms, including Hadsell, Stormer, Richardson & Renick, a private firm with five partners, and

28   Litt, Estuar & Kitson, a private firm with three equity partners and two or three associates at one

DECLARATION OF SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    time, depending on case demands.  As part of my inquiry, I obtain from these firms any court orders

2    in the past year awarding them statutory fees.

3        6.       I have presented at CLEs on attorney fees on several occasions.  Most recently, I

4    provided training for attorneys at the Legal Aid Foundation of Los Angeles.  My supporting fee

5    declarations have been cited favorably by numerous courts, including in *Nadarajah v. Holder,* 569

6    F.3d 906, 916–917 (9th Cir. 2009); *Orantes-Hernandez v. Holder,* 713 F.Supp.2d 929, 963–964

7    (C.D.Cal. 2010); *Torrance Unified Sch. Dist. v. Magee,* CV 07-2164 CAS (Rzx) (C.D.Cal. 2008),

8    [2008 U.S.Dist. Lexis 95074, 21]; *Atkins v. Miller,* CV-01-01574 DDP (C.D.Cal 2007); and

9    *Jochimsen v. County of Los Angeles*, B223518 (2d Dist. June 23, 2011) (unpublished).

10       7.       Based on the information I have obtained regarding market rates, I have formed the

11   opinion that there is a growing difference between the fees sought and awarded to boutique civil

12   rights firms and public-interest legal offices,  and the fees awarded to larger business law firms

13   which occasionally do pro bono civil rights and civil liberties litigation.  This is so even when the

14   civil rights lawyers co-counsel a case with the large firms and even though the skill and experience

15   of the attorneys in question is comparable.  Despite this divergence, the public-interest and private

16   civil rights bar is closer to large firm rates than to those of small firms doing general litigation.

17       8.       Billing by lawyers at civil rights firms and public interest organizations at rates even

18   marginally comparable to those of attorneys who do other types of complex litigation is consistent

19   with the direction of the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984) and the

20   California Supreme Court in *Folsom v. Butte County Ass'n of Govt's*, 32 Cal.3d 668 (1982).  Those

21   cases hold that the determination of appropriate market billing rates for prevailing party attorneys

22   of similar skill, experience and reputation does not depend upon whether the attorneys work for

23   a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal

24   rate for paying clients with the possibility of receiving a market rate award if successful. *See also*

25   *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1097-98 (2000) (rejecting argument that in-house

26   counsel could not recover fees at market rates).  Based on my experience over the past 33 years

27   working at the ACLU and the pro bono bar, civil rights lawyers are often more skilled and

28   experienced than their classmates at large law firms because the civil rights attorneys handle major

3

DECLARATION OF SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1  litigation from the beginning of their employment, no matter how many years of practice they may

2  have.

3       9.     In addition to speaking with partners at various law firms, I have also become

4  familiar with market rates charged by attorneys in the Los Angeles area by reviewing declarations

5  filed in fee applications in other cases, as well as decisions awarding fees.  Specifically, in addition

6  to reviewing awards to the firms described in paragraph 5, I regularly review fee motions submitted

7  by, and awards made to, the ACLU Foundation of Southern California, the Mexican America Legal

8  Defense and Educational Fund ("MALDEF"), the Western Center on Law and Poverty, Public

9  Counsel, the Disability Rights Legal Center and other public interest groups in Los Angeles to

10  determine what is being sought and awarded as market rates.  I also search for fee awards and

11  supporting fee declarations using various legal databases, including LEXIS.  It is my practice to

12  utilize the federal case database, PACER, to obtain copies of declarations and other documents

13  filed in support of fee motions.  I conduct these searches both to obtain information regarding local

14  market rates and, in some instances, to obtain public documents setting out the rates charged by

15  opposing counsel.

16       10.    Reasonable market rates may be established in several ways.  Rates awarded to the

17  attorneys in previous cases are strong evidence of reasonable market rates.  *See Margolin v.*

18  *Regional Planning Comm'n*, 134 Cal.App.3d 999, 1005 (1982).  Evidence of billing rates by

19  attorneys engaged in similarly complex business litigation is an approved method of establishing

20  reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly

21  basis.  This approach has been sanctioned by both the California and federal courts, focusing on

22  a comparison to market rates for attorneys of similar skill, experience and reputation, since most

23  civil rights attorneys are not paid hourly for their services at market rates.  *See e.g.,* Pearl,

24  *California Attorney Fee Awards*, CEB 2012, §9.109 (2012).  In deciding the reasonableness of the

25  requested rates, California courts follow the rule that the relative "simplicity" or "complexity" of

26  a case is reflected in the efficiency of hours, not the lodestar rate of the attorney.  *Ketchum v.*

27  *Moses*, 24 Cal.4th 1122, 1139 (2001) (holding that a multiplier would be permissible even though

28  the case involved a "relatively simple" anti-SLAPP motion).

11.    I understand that attorney fees are being sought in this action for V. James DeSimone and Menaka Fernando of Schonbrun, DeSimone, Seplow, Harris, Hoffman and Harrison; Anthony Luti; Dennis Wilson; and Matthew Krupnick and Stephanie Story of the Krupnick firm. I am informed that plaintiffs are also seeking fees for a 2012 law graduate admitted to the bar in December 2012 and another 2012 law graduate awaiting her Bar results, as well as for a paralegal. The chart below sets out the individuals for whom fees are sought, the year of graduation where applicable, and the rates sought.

| Attorney | Firm | Graduation | Rate |
|---|---|---|---|
| V. James DeSimone | SDSHHH | 1985 | $725 |
| Menaka | SDSHHH | 2010 | $375 |
| Dennis Wilson | Wilson | 1988 | $650 |
| Anthony Luti | Luti | 2000 | $550 |
| Matthew Krupnick | Krupnick | 2004 | $450 |
| Stephanie Story | Krupnick | 2009 | $375 |
| Fatemeh Mashouf | SDSHHH | 2012 | $275 |
| law graduate | SDSHHH | 2012 | $275 |
| paralegal | SDSHHH | | $175 |

12.    I have known Mr. DeSimone since the late 1980s, shortly after he began practicing law. Mr. DeSimone was a law school classmate of an attorney who was at the ACLU at that time. When Mr. DeSimone was appealing an employment discrimination case to the California Court of Appeal, he contacted me to discuss the case, which I recall was his first appeal. The case resulted in a precedent setting published decision benefitting the rights of California employees under the Fair Employment & Housing Act ("FEHA"). Since then, I have had multiple professional contacts with Mr. DeSimone and have formed the opinion that he is a highly skilled and competent attorney. I co-counseled a First Amendment police misconduct case, *MIWON v. City of Los Angeles*, CV 07-7032 AHM, with Mr. DeSimone's firm from 2007 to 2009. In that case, the 2009 rate at which Mr. DeSimone was billed was $625 an hour. I am aware, based on my review of the order issued in *Taylor-Ewing v. City of Los Angeles*, cv-07-5556 GHK (C.D. Ca.), that Mr. DeSimone was awarded fees at the 2010 rate of $650 an hour in the Central District. I am also

1    aware that Mr. DeSimone was awarded fees in 2012 at the rate of $695.

2        13.    I am also familiar with the work of Ms. Fernando, although I know her less well than

3    I know Mr. DeSimone.  Prior to the time that she became an associate with Mr. DeSimone's firm,

4    I worked with Ms. Fernando on a Native American burial ground issue.  I had the opportunity to

5    interact with her and review her work and, on that basis, I have formed the opinion that she is a

6    highly skilled attorney for someone who was graduated less than three years ago.  In my

7    experience, individually and as a law firm, the lawyers at Schonbrun, DeSimone, Seplow, Harris,

8    Hoffman & Harrison are well regarded as civil rights attorneys.  It is my opinion, based on my

9    knowledge of the experience and skill of each attorney and my general interaction with the SDSHH

10   firm, as well as my awareness of billing rates for lawyers of similar skill, reputation and experience

11   in the greater Los Angeles area, that the hourly rates sought by this motion are well within the range

12   of reasonable market rates for each attorney.

13       14.    Of the remaining attorneys, the only one I am personally familiar with is Mr. Luti.

14   When he was an associate with Latham & Watkins, Mr. Luti was one of the opposing counsel in

15   anti-SLAPP litigation in which I, along with two public interest firms, defended against a lawsuit

16   arising from charges of sweatshop employment conditions.  Although we were on opposite sides

17   of the case, I had the opportunity to observe Mr. Luti's work in the extensive briefing, multiple

18   writs and appeal before the case was finally settled.  I have followed his career since then and am

19   aware that he has had significant success as a plaintiff's civil rights attorney.

20       15.    Attached to my declaration are decisions and declarations filed in the Los Angeles

21   legal market over the past five years awarding attorney fees in civil rights litigation, consumer class

22   actions and complex business litigation.  Based on my review of the fee applications and awards to

23   attorneys at large law firms doing similarly complex cases to civil rights litigation, I have formed

24   the opinion that rates at large firms have increased dramatically over the last five to seven years,

25   while increases for civil rights lawyers have been more modest.  For example, I have utilized several

26   years of rates from Quinn, Emanuel to support the reasonableness of the rates in this case.  In 2006,

27   in *Comite de Jornaleros v. City of Redondo Beach*, cv 04-9396 CBM (JTLx), 2006 U.S. Dist. LEXIS

28   95610 (C.D. Cal. Dec. 12, 2006), the court relied upon a declaration submitted by a partner at the

firm in support of the motion for attorney fees, averring that the rate for a 2002 graduate was $360 an hour.  Ex. 8, p.4.  By 2012, the firm's rate for a 2001 graduate  had more than doubled to $790 an hour.  *See* Exhibit 11, p.9.  The same is true for Skadden Arps.  In 2005, a 2001 graduate with Skadden was billed at $480 an hour.  Ex. 15, p.6.  In 2011, a 2001 graduate was billed at $710 an hour.  Ex. 16, p.4 (Rosen).   The Skadden rate increased by almost 50 percent in six years.

16.    By comparison, with rare exception, public interest rates increased far more modestly.  For example, the 2006 rate for Robert Rubin, an attorney with the Lawyers Committee for Civil Rights in San Francisco and one of the attorneys in the *Comite de Jornaleros* litigation, was $625 an hour.  *See* Exhibit 8, p.3.  In 2012, Mr. Rubin's rate was $770 an hour, an increase of less than 25 percent over the course of six years. Ex. 9, p.6.  Although the opinion does not state Mr. Rubin's year of graduation, based on my personal interactions with Mr. Rubin over the past 30 years, I am aware that he was graduated from law school in 1978, as was I.  Over that same six-year time period, my own rate increased from $590 an hour to $795 in 2012, for a total increase of 34 percent.

17.    Attached at Exhibit 7 is the 2010 decision by the Honorable Alicemarie Stotler, awarding fees to plaintiffs in a consumer class action against Hyundai Motors.  *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160 (C.D. Ca. 2010).  Judge Stotler awarded full fees on the plaintiffs' motion following settlement of the merits claim.  The Court approved $675 an hour for Eric Gibbs, $545 to Dylan Hughes, and $445 to Geoffrey Munroe. *Id.* at 1172.  I reviewed the declarations filed by Mssrs. Gibbs and Siegel in support of the fee motion in *Parkinson*, as well as the State Bar website and the Girard Gibbs website.  Based on these sources, I understand Mr. Gibbs is a 1995 law graduate,  Mr. Hughes is a 2000 law graduate, and Mr. Munroe is a 2003 law graduate.

18.    The rates awarded in *Parkinson* support the reasonableness of the rates sought by plaintiffs' counsel in this instance.  Mr. Gibbs graduated a decade after Mr. DeSimone; however, his 2010 rate is only $50 an hour less than the 2013 rate now sought for Mr. DeSimone.  The 2010 rate approved for Mr. Siegel, a 1993 graduate, is the same as the rate now sought for Mr. Wilson, a 1988 graduate.  The rate sought for Mr. Luti, is only $5 higher than the 2010 rate awarded to Mr. Hughes in the *Parkinson* case.  Both Mr. Luti and Mr. Hughes are 2000 graduates. Mr. Krupnick,

7

DECLARATION OF SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    a 2004 graduate, seeks a rate only $5 higher than the 2010 rate awarded to Mr. Munroe in

2    *Parkinson*.

3        19.    The rates billed by, and awarded to, Quinn, Emanuel attorneys between 2006 and

4    2012 support the reasonableness of rates sought in this instance. As noted above, in *Comite de*

5    *Jornaleros*, the court cited to a supporting declaration from Quinn, Emanuel setting forth the rates

6    of $650 to $675 an hour for a 1991 graduate. Exhibit 8, p.4. At the low end, this is barely 10

7    percent less than the rate now being sought seven billing years later for Mr. DeSimone, a 1985

8    graduate. In 2008, Danielle Gilmore, a partner at Quinn Emanuel, filed a declaration in support of

9    a motion for attorney fees in Los Angeles Superior Court in which she averred that her rate was

10   $685 an hour. Exhibit 10, p. 4. I reviewed the State Bar website and the Quinn Emanuel website

11   and, on that basis, have formed the belief that Ms. Gilmore is a 1993 graduate. Ms. Gilmore's 2008

12   rate is approximately seven percent below Mr. DeSimone's 2013 rate. In 2012, Quinn Emanuel was

13   awarded fees as a discovery sanction in the intellectual property litigation between Apple and

14   Samsung Electronics, *Apple v. Samsung Electronics Co., Ltd.*, 2012 U.S. Dist. LEXIS 160668

15   (N.D.Cal. Nov. 7, 2012). A true and correct copy of the Court's decision is attached at Exhibit 11.

16   In this most recent case, notwithstanding the reductions in hourly rates by the court, Marc Becker,

17   identified on the firm's website as a 1988 graduate and a partner at the Los Angeles office, was

18   awarded $800 an hour, a 20 percent reduction from his requested rate of $1,035 an hour. *Id.*, *38.

19   In the same decision, the court awarded $700 an hour to several other attorneys at Quinn Emanuel.

20   Id. For example, Diane Hutnyan awarded $700 hourly is listed on the firm's website as a partner

21   in the Los Angeles office and a 1997 graduate. Melissa Dalziel, also awarded $700 hourly, is listed

22   as a 2000 graduate. *Id.*

23       20.    To give another example, I am providing a declaration submitted in 2009 by Wayne

24   Barsky, a partner at Gibson Dunn, in a case the firm litigated pro bono in Los Angeles Superior

25   Court with Public Counsel and other public interest attorneys. A true and correct copy of the Barsky

26   declaration bearing the file stamp of the court is attached at Exhibit 3. Mr. Barsky averred that he

27   is a 1983 graduate and his rate was $905 an hour in 2009. Ex.3, p.16. The rate at which Gibson

28   Dunn billed a 1988 graduate in 2009 was $785 an hour (*id.*), 8 percent higher than the rate now

8

DECLARATION OF SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1 sought for Mr. DeSimone, a 1985 graduate, and more than 20 percent higher than the rate now

2 sought for Mr. Wilson, a 1988 graduate.  I have also attached a declaration by James Gilliam,

3 submitted in 2009 by the ACLU in support of a motion for attorney fees.  A true and correct copy

4 of the declaration, bearing the Court's filing header, is attached at Exhibit 15.  Mr. Gilliam was

5 formerly at Paul, Hastings, Janofsky & Walker LLP, where he was responsible for reviewing billing

6 records for pro bono litigation. Ex. 15, ¶4.  Through my 20 years as a staff attorney with the ACLU

7 and my subsequent 16 years as a cooperating counsel, I am very familiar with the ACLU attorneys

8 for whom Mr. Gilliam provided comparable billing rates in his declaration.  Of particular note in

9 Mr. Gilliam's declaration is his averment that a 1994 law graduate at the ACLU would have been

10 billed at $725 an hour in 2010.   Ex. 15, ¶6.  This is the same rate now being requested by Mr.

11 DeSimone, who was graduated a decade earlier.

12      21.    The rate of $650 an hour for Dennis Wilson is also well within the range of

13 reasonable rates for an attorney  practicing law for 25 years.  This rate is below all of the

14 comparable rates in the declarations and fee awards I reviewed to prepare my declaration.  For

15 example, a 1988 graduate was billed at $785 an hour in 2009 by Gibson Dunn.  Ex. 3, p.16.  In a

16 consumer class action, a 1995 graduate was awarded fees at the rate of $685 an hour in 2010.  Ex.

17 7, p.8.  In 2009, Jones Day was awarded fees for Mark Kemple in  *Santa Fe Pointe, LP, et al. v.*

18 *Greystone Servicing Corp., Inc., et al.*, 2009 U.S. Dist. LEXIS 100448, *4 (N.D. CA 2009).  A true

19 and correct copy of the decision is attached at Exhibit 13.  In addition to reading the opinion

20 awarding fees, I downloaded Mr. Kemple's declaration from the PACER website.   In his

21 declaration, Mr. Kemple averred that he was then practicing law for 20 years, making him a 1989

22 graduate. His 2009 rate was $675 an hour. Ex. 13, p.2.  Several years ago, both Quinn Emanuel and

23 Paul Hastings billed individuals who were graduated in 1993 or later at higher rates than the rate

24 now sought by Mr. Wilson.  *See* Ex, 10, p.4 (1983 graduate at $685); Ex. 14, ¶¶6,7 (1994 graduate

25 at $725).  In 2012, Philip Hwang of the Lawyers Committee for Civil Rights was billed at $620 an

26 hour, less than 5 percent below the rate now sought by Mr. Wilson, a 1998 graduate.  Ex. 9, p.6.

27      22.    The rate of $550 an hour for Mr. Luti is also well within the range of reasonable

28 market rates in my opinion.  I base this conclusion on the 2011 rate of $500 an hour my office was

DECLARATION OF SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
S-083

awarded for a 2001 graduate.  Ex. 2, p.3.  In addition, I have relied on the decisions awarding fees to Belinda Escobosa Helzer, a 2000 graduate at the ACLU, at the 2010 rate of $500 an hour and the 2011 rate of $550 an hour.  Ex. 5, p.8;[1] Ex. 6, p.3.  A true and correct copy of the Order and Findings of Fact entered by the Court in *Vasquez v. Raukaucus* is attached at Exhibit 6.  I have also relied on the declaration filed by MALDEF in support of a 2012 application seeking fees for a 2001 graduate at $620 an hour.  Ex. 9, p.6.  As further support for the rate sought by Mr. Luti, I have provided the decision awarding fees to attorneys at Quinn Emanuel at the 2012 rate of $681-700 an hour, which were considerably below the rates the attorneys sought.  Ex. 11, p.14.  The rate sought by Mr. Luti is also well below the rate of $575 an hour awarded to a 1998 graduate at Jones Day in 2009.  Ex. 13, p.2.

23.     The rate of $450 an hour is reasonable for Mr. Krupnick, a 2004 law graduate.  I base my opinion on the following decisions: in 2011 in *Vasquez v. Raukaucus*, Judge Fairbank awarded fees at the rate of $460 an hour to a 2006 associate at Munger Tolles & Olson.  Based on my personal discussions with the attorneys who litigated the case, I know that it was brought by the ACLU and co-counseled on a pro bono basis by attorneys from Munger, Tolles & Olson.  In the *Rogel* case, Wayne Barsky averred that Gibson Dunn billed a 2005 graduate at $495 an hour and a 2006 graduate at $470 an hour in 2009.  Ex.3, p. 17.  Finally, the rate now sought for Mr. Krupnick is just $5 different from the $455 an hour rate at which Skadden, Arps, Meagher, Slate and Flom billed a fifth-year associate in 2005.  Attached at Exhibit 15 is a true and correct copy of the fee declaration signed by former Skadden partner, Michael Lawson, setting forth the firm's rates as of September, 2005.

24.     The rate of $375 an hour for Ms. Fernando and Ms. Story is well within the range of reasonable market rates for attorneys of similar skill and experience.  I base my opinion upon the fee award in 2011 by Judge Michael Linfield in *Garrett v. City of Los Angeles*, a police misconduct case.  Judge Linfield awarded fees at the rate of $325 an hour to a 2009 graduate who worked with

---

[1] Because the Court's order attached at Exhibit 4, approving fees to the ACLU in this matter, did not set forth the individual rates, I have also submitted at Exhibit 5 the supporting declaration filed by the ACLU, which does detail the attorney, rate and year of graduation.

DECLARATION OF SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

me on that case.  Ex. 2, p.3.  In 2011, the 2009 graduate at my office had been practicing a year less than Ms. Fernando and two years less than Ms. Story.  I also considered the rates of $295 and $300 an hour awarded to second and third-year associates in 2006 in *Comite de Jornaleros*.  Ex. 8, p.3. The rate of $375 an hour sought in this case for Ms. Fernando and Ms. Story is far lower than the rates of $395 and $430 an hour billed by Skadden, Arps in 2005 for attorneys of similar experience. Ex. 15, p.3.   Finally, the rates for these two attorneys are far lower than the rate of $445 an hour billed by Quinn Emanuel in 2012 for a third-year associate.  Ex. 11, p.14.  I reviewed the website of Quinn Emanuel to determine the graduation rates of each attorney for whom fees were sought in that matter.

25.    I have submitted with my declaration at Exhibit 17 a chart summarizing by year of graduation the evidence I have relied on for assessing the requested market rate for each attorney set out above.  For each exhibit, I have set out the name of the case, the year of graduation for the attorneys and the year of the award.

26.    I understand that Plaintiffs also seek compensation at $275 an hour for a law graduate with experience as a paralegal.  In 2010, I was awarded fees on remand to the Central District of California in *Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1010 (9th Cir. 2008), in which I billed time for a 2009 law graduate.  The rate I was awarded for her time prior to her admission to the Bar was $200 an hour.  After she passed the Bar in November, 2009, I billed her time at $275 an hour.  In Exhibit 15, the 2005 rate for a law graduate awaiting admission was listed as $280 an hour.  In Exhibit 10, Sara Brenner, a 2006 graduate is listed at the initial rate of $310 an hour.

27.    I am informed that Plaintiffs are seeking compensation for paralegal services at the rate of $175 an hour.   As the exhibits to my declaration demonstrate, it is customary to bill separately for paralegal time in Los Angeles, rather than include it in the firm's overhead.  The rate of $175 an hour is well within the market rate for paralegals in Los Angeles.  For example, in 2009, Gibson, Dunn billed paralegals at rates ranging from $160 to $315.  Ex.3, p.18.  That same year, in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803, *10 (C.D. Cal. 2009), the ACLU was awarded fees for paralegals at $175 an hour.  *See* 2009 U.S. Dist. LEXIS 34803, *10.  In

---

11

DECLARATION OF SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*Vasquez*, the ACLU was awarded fees for paralegals at the 2011 rate of $200 an hour.  Ex. 6, p.3. In *Hickman*, the boutique civil rights firm of Traber & Voorhees was awarded fees for paralegal time at the 2011 rate of $200 an hour. Ex. 12, ¶12.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of April, 2013 at Santa Monica, California.

*Carol A. Sobel*

CAROL A. SOBEL

DECLARATION OF SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

S-086

# EXHIBIT "6"

1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

| | |
|---|---|
| COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a nonprofit corporation, and AUDREY HARTHORN, an individual, on behalf of themselves and ALL OTHERS SIMILARLY SITUATED<br><br>        Plaintiffs,<br><br>    vs.<br><br><br>CITY OF LOS ANGELES, a public entity, and COUNTY OF LOS ANGELES, a public entity,<br><br>        Defendants. | CASE NO. CV 09-0287 CBM (RZx)<br><br>CLASS ACTION<br><br>ORDER GRANTING PLAINTIFFS' APPLICATION FOR REASONABLE ATTORNEYS' FEES AND COSTS |

24

25

26

27

28

      Before the court is Plaintiffs' Application for Reasonable Attorneys' Fees and Costs.  [Docket No. 234.]  Plaintiffs have applied to the Court for an order approving attorneys' fees and reimbursement of litigation costs to Class Counsel in the amount of $1,225,000, and up to $75,000 in attorneys' fees and costs for

monitoring the Settlement Agreement ("Agreement"). Defendant County of Los Angeles does not oppose the motion, and these are the amounts contained in the proposed class settlement agreement between the Plaintiffs and the County. Having read the papers submitted and carefully considered the arguments and relevant legal authority, and good cause appearing, the Court GRANTS Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs and finds and rules as follows:

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Court finds that Plaintiffs have submitted sufficient evidence supporting their claim for reasonable attorneys' fees and costs, and hereby approves the settlement of attorneys' fees and costs in the amount of $1,225,000 for work performed on this matter, as stated in Section VII of the Agreement. The Court also approves the availability of fees and costs for monitoring the Agreement after Final Approval, in an amount up to $75,000, as stated in Section VI.G of the Agreement.

2.      The Court finds that Plaintiffs have provided sufficient evidence, including time records detailing the tasks performed on this matter and declarations from practitioners in the field, supporting the reasonableness of their 2012 requested hourly rates. The Court finds that the requested hourly rates correspond to the prevailing market rate in the relevant community, considering the experience, skill, and reputation of the attorneys in question.

3.      Class counsel stated that no other litigation in the country has sought to determine the nature and extent of a municipality's obligation to include persons with disabilities in its emergency preparedness and planning efforts. Therefore, counsel had to conduct considerable research, familiarize themselves with the fact intensive literature on the subject of emergency planning, and explore untested legal theories. The active litigation included extensive, voluminous discovery, numerous depositions, and thousands of pages of

S-089

documents. The negotiations were thorough, involving many teleconferences, in-person meetings, and conferences and mediation sessions before two judges. Additionally, after a joint request to stay the litigation, the Court approved a process where Plaintiffs and the Defendant County would coordinate to draft a "Persons with Disabilities and Access and Functional Needs Annex," ("Annex") for which the experts conferred and resolved many issues, and any disputes were referred to counsel. Resolving the issues involved many settlement conferences on the phone and in person, and multiple proposals and drafts by both parties. After the Annex was sent out for public comment in late 2011, the U.S. Department of Justice detailed its concerns, after which a second draft was developed and Defendant County of Los Angeles developed a work plan. Negotiations continued for five months regarding the scope of the Annex and workplan. Parties then attended two mediation sessions in February and July 2012 and were able to resolve all outstanding substantive issues. After the July mediation session, parties continued to work together to finalize the Agreement and other matters, including attorneys' fees and costs. The proposed settlement was approved by the Los Angeles County Board of Supervisors on October 15, 2012.

4. The Court finds that Class Counsel was efficient in allocating work. Counsel states that only four attorneys performed the majority of the work required, that discrete tasks were given to other attorneys as needed, and that a small group of attorneys litigated the entire case. Counsel also states that Attorneys Wolinsky, Smith, and Gilbride from Disability Rights Advocates ("DRA"), and Attorney Parks from Disability Rights Legal Center ("DRLC"), did a majority of the work.

5. In support of the hourly rates quoted by lead attorneys in this case, Attorney Wolinsky is a graduate of Yale Law School in 1961 and has been

S-090

1 practicing law and trying cases for over 50 years.  He has been the lead and trial
2 attorney in well over 150 class action and high-impact cases, and has tried and
3 argued cases before the California and New York Federal Courts, the California
4 and Hawaii Supreme Courts, and many other appellate courts.  He is the Director
5 of Litigation at DRA and is considered one of the foremost experts nationally on
6 civil rights and disability law, and is requesting an hourly rate of $860.  Attorney
7 Parks is a 1999 graduate of University of California at Berkeley, Boalt Hall, and is
8 nationally recognized as a leading disability rights attorney and has been co-
9 director of litigation at DRA since April 2012.  From 2005 to March 2012, she
10 was at the DRLC, where she was a litigation attorney, and later the legal director
11 from 2009 to 2012, and is requesting an hourly rate of $665.  Attorney Smith is
12 managing attorney at DRA, and graduated from U.C. Berkeley, Boalt Hall Law
13 School in 2005.  She received the 2013 California Lawyer Magazine Attorney of
14 the Year Award in the area of Disability Law for her work on this litigation and
15 the 2010 California Lawyer Attorney of the Year Award in the area of Disability
16 Law for her work on the above referenced Caltrans case, and is requesting an
17 hourly rate of $555.  Attorney Gilbride is a 2007 graduate of Georgetown Law
18 School and worked on this case as part of DRA.  Attorney Gilbride served as a
19 law clerk to Judge Ronald Gould on the U.S. Court of Appeals for the Ninth
20 Circuit in Seattle.  She conducted much of the written discovery and took and
21 defended several depositions.  She was also responsible for all expert discovery,
22 and is knowledgeable in the requirements for emergency preparedness under the
23 law, and is requesting an hourly rate of $430.

24     6.    In support of the hourly rates quoted by other attorneys in this case,
25 Attorney Uzeta is a 1992 graduate of University of California at Davis, King Hall
26 School of Law, with a Certification in Public Interest Law.  She has practiced
27 exclusively in the area of civil rights law, in particular disability rights, since
28

1993.  From February 1995 to August 2008, she worked as an attorney at
Disability Rights California ("DRC"), the largest disability rights organization in
the nation, where she represented individuals and classes with disabilities in
federal and state litigation.  From August 2008 to December 2010, she was
employed as the Litigation Director of the Southern California Housing Rights
Center, a Los Angeles based nonprofit whose mission is to combat housing
discrimination, where she engaged mostly in disability discrimination cases, and is
requesting an hourly rate of $700.  Attorney Paradis is the Executive Director and
Co-Director of Litigation at DRA.  He graduated from Harvard Law School in
1985 and has extensive experience with disability rights litigation, and has
received several awards for his work on precedent setting disability rights cases,
including the California Lawyer Magazine Attorney of the Year Award in 2003
and 2011 and the Trial Lawyer of the Year Award from the San Francisco Trial
Lawyers Association.  Mr. Paradis assisted with advising the litigation team on
settlement strategy and potential experts, and is requesting an hourly rate of $800.
Attorney Elsberry is a 1987 graduate of University of California, Hastings College
of Law. He was a Managing Attorney at DRA from 2009 to 2012, and is currently
a Senior Staff Attorney at DRLC. He assisted with certain tasks relating to class
certification, and is requesting an hourly rate of $725.  Attorney Weed is a 2002
graduate of the University of Michigan Law School.  She was involved in the
preliminary investigation and review of the voluminous public records, and is
requesting an hourly rate of $600.  Attorney Biedermann is a 2007 graduate of
Yale Law School and was an Arthur Liman Fellow at DRA from 2007 to 2009.
She assisted with the review of many public records and drafting the complaint,
and is requesting an hourly rate of $430.  Attorney Chuang is a 2007 graduate of
University of Pennsylvania Law School and has been a Staff Attorney at DRA
since 2011.  Previously, she was a Litigation Associate at Latham & Watkins LLP.

S-092

She primarily worked on finalizing the settlement agreement, providing notice to the class, and drafting the motions for preliminary and final approval, as well as the motion for reasonable attorneys' fees and costs, and is requesting an hourly rate of $430.  Attorney Janssen is currently a Staff Attorney at DRA and graduated from New York University School of Law in 2010.  She assisted with discrete tasks relating to the negotiation of the County's Work Plan and draft Annex, and is requesting an hourly rate of $330.  Attorneys Patkin, Lee, and Strugar worked on the case in their capacity as attorneys at DRLC.  Former DRLC staff attorney Patkin is a 2007 graduate of UCLA School of Law, and is requesting an hourly rate of $450.  Former DRLC staff attorney Strugar is a 2004 graduate of USC Gould School of Law, and is requesting an hourly rate of $525.  Former DRLC staff attorney Lee is a 2003 graduate of Loyola Law School, and is requesting an hourly rate of $550.  The Fee Experts cited by Attorneys indicate that the hourly rates requested by all of these attorneys is reasonable.

7.     The Court finds that the rate of $240 for DRA's paralegals and $250 for its summer associates is reasonable.  DRA's paralegals are college graduates that have worked under attorney supervision for over a year.  DRA's summer associates generally have two full years of law school experience before working at DRA for their second-year summer.  The Court further finds that the hourly rate of $230 for DRLC's law clerks and litigation assistants is reasonable.

8.     The Court hereby approves the following 2012 hourly rates and hours expended:

| DRA | Rate | Hours | Fees |
|---|---|---|---|
| Sid Wolinsky | $860.00 | 700.00 | $602,000.00 |
| Shawna Parks | $665.00 | 81.40 | $54,131.00 |
| Mary-Lee Smith | $555.00 | 139.50 | $77,422.50 |
| Karla Gilbride | $430.00 | 494.40 | $212,592.00 |

S-093

| DRA | Rate | Hours | Fees |
|---|---|---|---|
| Larry Paradis | $800.00 | 15.80 | $12,640.00 |
| Ron Elsberry | $725.00 | 18.30 | $13,267.50 |
| Katherine Weed | $600.00 | 20.50 | $12,300.00 |
| Stephanie Biedermann | $430.00 | 184.00 | $79,120.00 |
| Christine Chuang | $430.00 | 125.00 | $53,750.00 |
| Kara Janssen | $330.00 | 36.40 | $12,012.00 |
| Summer Associates | $250.00 | 26.70 | $6,675.00 |
| Paralegals | $240.00 | 260.90 | $62,616.00 |

| DRLC | Rate | Hours | Fees |
|---|---|---|---|
| Michelle Uzeta | $700.00 | 35.50 | $24,850.00 |
| Shawna Parks | $665.00 | 285.60 | $189,924.00 |
| Debra Patkin | $450.00 | 143.50 | $64,575.00 |
| Jennifer Lee | $550.00 | 16.00 | $8,800.00 |
| Matthew Strugar | $525.00 | 20.20 | $10,605.00 |
| Law Clerk | $230.00 | 122.90 | $28,267.00 |
| Steve Cueller (Litigation Assist.) | $230.00 | 4.70 | $1,081.00 |

9.      The Court finds that the hourly rates and hours expended are reasonable under established Ninth Circuit law. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing the lodestar figure and the requirement to consider factors outlined in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975)).[1]

---

[1] The requested Attorneys' Fees and Costs stem from negotiations between Class Counsel and the County of Los Angeles, and are much lower than the fees calculated under the lodestar method. The calculated fees, without any multiplier, are $1,526,628.00 and the costs expended are $47,903.05, for a total of $1,574,531.05, which is $349,531.05 greater than the amount negotiated by the Settlement. Since this case involved injunctive and declaratory relief, the Fee award will not result in an "inequity" between Counsel and Class Members. *See In re HP Inkjet Printer Litig.*, 11-16097, --- F.3d ----, 2013 WL 1986396, *1, *5 (9th Cir. May 15, 2013) (reasoning that "coupon" settlements may create inequity where Class Counsel request fees and

7

S-094

10. The Court further finds that Counsel has submitted sufficient evidence of the time and effort undertaken by Class Counsel in prosecuting and settling the claims, and that this time and effort was reasonable and necessary in light of the needs of the litigation.

In accordance with the terms of the Agreement, the County of Los Angeles shall pay attorneys' fees and reimbursement of litigation costs to Class Counsel in the amount of $1,225,000 within ninety (90) days of this Order (September 9, 2013) and up to $75,000 for monitoring the Agreement within six (6) years of this Order.

**IT IS SO ORDERED.**

DATED: June 10, 2013

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

costs).

S-095

**EXHIBIT "7"**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | | |
|---|---|---|---|
| DATE: 09/24/14 | | **DEPT.** 62 | |
| HONORABLE MICHAEL L. STERN | JUDGE | T. BARKLEY | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| | | PRO TEM | |
| M. CARRILLO, C.A. | Deputy Sheriff | JANE HONG-ELSEY 11975 | Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC533872 | Plaintiff<br>Counsel | CHRISTOPHER KNAUF (X) |
| | JAMES PAUL COX ET AL<br>VS<br>HARSHAD PATEL ET AL | Defendant<br>Counsel | VICTOR OTTEN (X)<br>COURT CALL |
| | Fee Waiver Pending | | |

**NATURE OF PROCEEDINGS:**

PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION **DRAFT**

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

The motions are called and argued.

The motions are submitted.


LATER:

The Court has read the plaintiff's motions for
attorneys' fees and for a permanent injunction
and opposition thereto, and, having heard oral
argument of counsel and taken both motions under
submission, rules as follows:

MOTION FOR ATTORNEYS' FEES

As the prevailing party, plaintiff is entitled to his
reasonable attorneys' fees pursuant to Civil Code
section 52(a).

The Court has carefully reviewed the attorney time
billings, the qualifications and backgrounds of
plaintiff's attorneys for the purpose of evaluating
the billing rates of those attorneys and plaintiff's
submissions regarding the hourly billing rates in the
legal community for this type of work performed by
attorneys of like experience.

Page    1 of  6    DEPT. 62

MINUTES ENTERED
09/24/14
COUNTY CLERK

S-097

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/24/14 | DEPT. 62 |
| HONORABLE MICHAEL L. STERN  JUDGE | T. BARKLEY  DEPUTY CLERK |
| HONORABLE  JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| | PRO TEM |
| M. CARRILLO, C.A.  Deputy Sheriff | JANE HONG-ELSEY 11975  Reporter |

| | |
|---|---|
| 8:30 am | BC533872 |
| | JAMES PAUL COX ET AL<br>VS<br>HARSHAD PATEL ET AL |
| | Fee Waiver Pending |

Plaintiff Counsel: CHRISTOPHER KNAUF (X)

Defendant Counsel: VICTOR OTTEN (X) COURT CALL

**NATURE OF PROCEEDINGS:**

Based on this review and taking defendants' opposition into account, the Court grants plaintiff's motion for attorneys' fees in the amount of $106,568.25. Plaintiff's request for attorneys' fees for paralegal work in the amount of $1,225.50 is disallowed.

Plaintiff's attorneys' fees request is reasonable under the lodestar method and in consideration of the nature of his cause of actions and the pretrial litigation and trial of his claims.

The amount of time expended on this case by plaintiffs counsel is reasonable and justified. Defendant's presented a vigorous defense during the pretrial phase and at trial. Given the defense, the defendant counsel's present characterization of the plaintiff's attorney's fees request as "ridiculous" is misplaced.

Plaintiff's disability discrimination claims were not trumped up. He presented a legitimate case for liability, as evidenced by the jury's findings. The jury awarded a relatively small amount of damages. But plaintiff was required to prepare for and conduct a full-blown jury trial to obtain relief for the denial of his legal rights.

Page   2 of  6    DEPT. 62

MINUTES ENTERED
09/24/14
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 09/24/14 | | | DEPT. 62 | |
|---|---|---|---|---|
| HONORABLE MICHAEL L. STERN | JUDGE | T. BARKLEY | DEPUTY CLERK | |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR | |
| M. CARRILLO, C.A. | Deputy Sheriff | PRO TEM<br>JANE HONG-ELSEY 11975 | Reporter | |

| 8:30 am | BC533872 | Plaintiff CHRISTOPHER KNAUF (X) |
|---|---|---|
| | JAMES PAUL COX ET AL | Counsel |
| | VS | Defendant VICTOR OTTEN (X) |
| | HARSHAD PATEL ET AL | Counsel COURT CALL |
| | Fee Waiver Pending | |

**NATURE OF PROCEEDINGS:**

Both sides in any trial in which attorneys' fees may
be awarded to the prevailing party by statute
necessarily come to trial with such realities in mind.
This is particularly true in a case like this in which
it is well-known that going to trial presents
substantial risks. A reasonable award of
attorney's consistent with the work performed
necessarily follows.

MOTION FOR PERMANENT INJUNCTION

Plaintiff moves for injunctive relief under
Civil Code section 52(c)(3) and Business and
Professions Code section 17200 et seq.

Plaintiff contends that he might want to stay at
defendants' hotel again because it is
convenient in an area that he visits from time-to-
time. He feels deterred from staying at the hotel due
to defendants' practices. He fears future
discriminaiton based on his disability, especially
because he learned at trial that defendants have
insufficient policies or apparent employee training
regarding discrimination against persons with
disabilities or how to prevent such discrimination.

Defendants respond that the particular employee who
most directly interacted with plaintiff in the
incident in question no longer works at the hotel.
While this change in personnel might alleviate future

Page    3 of  6    DEPT. 62

**MINUTES ENTERED**
09/24/14
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 09/24/14 | | **DEPT.** 62 |
| HONORABLE MICHAEL L. STERN  JUDGE | T. BARKLEY | DEPUTY CLERK |
| HONORABLE  JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A.  Deputy Sheriff | PRO TEM<br>JANE HONG-ELSEY 11975 | Reporter |

| | |
|---|---|
| 8:30 am BC533872<br><br>JAMES PAUL COX ET AL<br>VS<br>HARSHAD PATEL ET AL<br><br>Fee Waiver Pending | Plaintiff    CHRISTOPHER KNAUF (X)<br>Counsel<br><br>Defendant   VICTOR OTTEN (X)<br>Counsel    COURT CALL |

**NATURE OF PROCEEDINGS:**

discrimination issues concerning that employee,
defendants apparently have taken no steps
to eliminate future disabilities discrimination
at the hotel.

Under the circumstances, there remains a substantial
liklihood that defendants will continue to
discriminate against persons with disabilties.
See, Hankins v. El Torito, 63 Cal.App.4th 510 (1998).

For these reasons, the Court will issue an
appropriate permanent injunctive enjoining defendants
and their employees from denying reasonable
accommodations to persons with disabilities.
Such an injunction will not emcompass
plaintiff's request for a mandatory injunction
to develop a written policy and conducting
employee training regarding disabilities.  The
Court cannot supervise such an injunction.

Plaintiff's counsel is ordered to prepare an amended
judgment that delineates damages and includes a sum
of damages, attorneys' fees and costs per plaintiff's
memorandum of costs and a proposed permanent
injunction. The amended judgment shall be prepared
by September 30, 2014 and and sent by email
to defendant's counsel by that date.
Counsel shall meet and confer regarding
the content and form of the proposed amended

Page   4 of  6    DEPT. 62

**MINUTES ENTERED**
09/24/14
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/24/14 | **DEPT.** 62 |
| HONORABLE MICHAEL L. STERN          JUDGE | T. BARKLEY          DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A.          Deputy Sheriff | PRO TEM<br>JANE HONG-ELSEY 11975          Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC533872<br><br>JAMES PAUL COX ET AL<br>VS<br>HARSHAD PATEL ET AL<br><br>Fee Waiver Pending | Plaintiff<br>Counsel | CHRISTOPHER KNAUF (X) |
| | | Defendant<br>Counsel | VICTOR OTTEN (X)<br>COURT CALL |

**NATURE OF PROCEEDINGS:**

judgment.  After meeting and conferring with
defendants' counsel, plaintiff's counsel shall
lodge the proposed amended judgment directly in
in Department 62 by October 7, 2014.  Any
objections by defendants' counsel shall also be filed
directly in this department by October 7, 2014.


               CLERK'S CERTIFICATE OF MAILING


I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the minute order dated
September 24, 2014
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the courthouse in Los Angeles,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,
in accordance with standard court practices.

Dated: September 25, 2014

Sherri R. Carter, Executive Officer/Clerk


                Page   5 of  6   DEPT. 62

**MINUTES ENTERED**
09/24/14
**COUNTY CLERK**

S-101

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/24/14 | **DEPT.** 62 |
| HONORABLE MICHAEL L. STERN  JUDGE | T. BARKLEY  DEPUTY CLERK |
| HONORABLE  JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| | PRO TEM |
| M. CARRILLO, C.A.  Deputy Sheriff | JANE HONG-ELSEY 11975  Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC533872 | Plaintiff Counsel | CHRISTOPHER KNAUF (X) |
| | JAMES PAUL COX ET AL | | |
| | VS | Defendant Counsel | VICTOR OTTEN (X) |
| | HARSHAD PATEL ET AL | | COURT CALL |
| | | | |
| | Fee Waiver Pending | | |

**NATURE OF PROCEEDINGS:**

By: _____
            T. BARKLEY


CHRISTOPHER H. KNAUF, ESQ.
2001 Wilshire Blvd., Ste. 205
Santa Monica, CA  90403

VICTOR J. OTTEN, ESQ.
3620 Pacific Coast Hwy #100
Torrance, CA   90505


                    Page   6 of  6    DEPT. 62

**MINUTES ENTERED**
09/24/14
**COUNTY CLERK**

# EXHIBIT "8"

1   DISABILITY RIGHTS LEGAL CENTER
       Paula D. Pearlman (Cal. State Bar No. 109038)
2      paula.pearlman@lls.edu
       Anna Rivera (SBN 239601)
3      Anna.Rivera@lls.edu
    919 Albany Street
4   Los Angeles, CA 90015
    Telephone: (213) 736-8366
5   Facsimile:  (213) 487-2106

6   MILBANK TWEED HADLEY & MCCLOY, LLP
       Linda Dakin-Grimm (Cal. State Bar No. 119630)
7      ldakin@milbank.com
       Daniel M. Perry (Cal. State Bar No. 264146)
8      dperry@milbank.com
       Delilah Vinzon (Cal. State Bar No. 222681)
9      dvinzon@milbank.com
    601 South Figueroa Street, 30th Floor
10  Los Angeles, CA 90017
    Telephone: (213) 892-4000
11  Facsimile: (213) 629-5063

12  *Attorneys for Student/Defendant Michael Garcia*

13           UNITED STATES COURT OF APPEALS
14               FOR THE NINTH CIRCUIT

15  LOS ANGELES UNIFIED SCHOOL          | Case No. 10-55879
    DISTRICT,
16                                      | Appeal from: Case No.: CV 09-
                        Plaintiff,      | 9289-VBF-(CTx)
17                                      | Related Case No: CV 09-8943-VBF-
18        vs.                           | (CTx)

19  MICHAEL GARCIA,
20                  Student/Defendant.  | **DECLARATION OF HANNAH**
21                                      | **CANNOM IN SUPPORT OF**
                                        | **DEFENDANT MICHAEL**
22                                      | **GARCIA'S MOTION FOR**
                                        | **REASONABLE ATTORNEY'S**
23                                      | **FEES AND COSTS**
24
25
26
27
28

# DECLARATION OF HANNAH CANNOM

I, HANNAH CANNOM, declare that if called as a witness I would testify competently from first-hand knowledge as follows:

1.     I am a member of the Bar of the State of California.  I am an associate at Milbank, Tweed, Hadley & McCloy in the Litigation & Arbitration group.  I am one of the attorneys primarily responsible for Milbank's representation of Defendant Michael Garcia ("Defendant") in this action.  I have personal knowledge of the facts contained herein and if called to testify, could and would competently testify thereto.

2.     I earned my J.D. from the University of California at Los Angeles School of Law in 2006 and my B.A. from the University of Pennsylvania in 2000. I was the primary Milbank attorney on this case during the Due Process Hearing before the Office of Administrative Hearings where I worked closely with the DRLC in preparing Mr. Garcia's due process case.  Prior to law school, I taught special education high school through the Teach for America program in San Jose, California.

3.     Five Milbank attorneys other than myself have been primarily involved in this case at its various stages: Daniel Perry, a partner at the firm; Delilah Vinzon, special counsel at the firm;  Kate Eklund, a former associate at the firm; Revi-ruth Enriquez, an associate at the firm; and Caitlin Hawks, a former associate at the firm.

4.     Support staff, including paralegal Ricky Windom, substantially contributed work to this matter.

5.     At least six other attorneys and support staff persons at Milbank worked on this matter, but in an exercise of billing discretion their fees are not being claimed.  Their fees total more than $45,000.00.

6.     Milbank's current rate for an associate with my level of experience is $800/hour.

7.     Daniel Perry graduated *Phi Beta Kappa* from the University of Wisconsin with a B.A. in 1996 and graduated *cum laude* with a J.D. from Cornell University in 1999.  He has practice law for almost fifteen years and is a member in good standing with both the California and New York State Bar Associations. The current Milbank rate for a partner with his level of experience is $1,135/hour.

8.     Delilah Vinzon graduated *cum laude* with a J.D. from the University of California Hastings College of Law and a B.A. from the University of California at Los Angeles.  Ms. Vinzon is special counsel in the firm's Litigation & Arbitration Group.  She has practiced law for over eleven years.  Ms. Vinzon won several Moot Court awards in law school.  The current rate for Milbank special counsel with her experience is $900/hour.  Ms. Vinzon was responsible for managing this case from the filing of the Due Process Request through its successful completion.  Ms. Vinzon also argued the case before the California Supreme Court.

9.     Kate Eklund received her J.D. from the University of Michigan Law School in 2009 and received her B.A. from the University of Michigan in 2004. Ms. Eklund is a former associate at Milbank.  The current Milbank rate in this case for an associate of her year is $550/hour.  Ms. Eklund performed much of the legal research and background information that was needed in the drafting of appellate briefs in this case.  Ms. Eklund now works in the Career Services Department of the University of California at Los Angeles School of Law.

10.     Revi-ruth Enriquez received her J.D. from Georgetown University in 2008 and her B.A. from Loyola Marymount University in 2002.  Ms. Enriquez is a sixth year associate at Milbank.  The current Milbank rate for an associate of her year is $760/hour.  Ms. Enriquez was the primary Milbank attorney on this case during the appellate process and worked diligently preparing the briefs that were filed before the United States Court of Appeals for the Ninth Circuit and the California Supreme Court.

11.     Caitlin Hawks received her J.D. from the University of California at Los Angeles School of Law in 2008 and received her B.A. from Puget Sound in 2004. Ms. Hawks is a former Milbank associate . The current Milbank rate for an associate of her year is $760/hour. Ms. Hawks helped support the team during Mr. Garcia's Due Process Hearing before the OAH and performed substantial work on the appeal. Ms. Hawks now works at the Savitt Bruce & Wiley law firm in Seattle, Washington.

12.     Ricky Window has been a paralegal for over 8 years. Mr. Windom received his J.D. from The Ohio State University in 2002 and his B.A. from Clark Atlanta University in 1998. The current Milbank rate for a paralegal with his experience is $230/hour.

13.     It is the practice of all Milbank attorneys and support staff whose time is billed to the client to record the time expended and expenses incurred with respect to each litigation matter on which the firm is engaged. The firm maintained such time records and records of expenses for this matter.

14.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of a report of Milbank's time records and records of expenses for this matter up to February 5, 2014. The records have been redacted in some places to protect attorney-client privileged information or attorney work product. Additionally, the records have been altered from the original report generated to deduct certain time entries that Milbank, in exercise of its billing judgment, has elected not to claim. None of these redactions or alterations have increased the total of any fees or expenses claimed. I have personally reviewed all the entries and calculations on this report. Any calculation errors in the totals of hours, fees, or expenses are inadvertent and mine alone. As of February 5, 2014, the total fees and expenses incurred by Milbank, after adjustments for billing judgment, are $541,840.

15.     Since the attached time report was prepared on February 5, 2014, significant additional time has been spent preparing this motion and its supporting

Case 2:17-cv-02629-SS Document 59-1 Filed 11/05/18 Page 109 of 121 Page ID
Case 1:16-cv-02629-SS Document 59-1 Filed 11/05/18 Entry: Page 109 of 121 Page ID
#:3498

declarations.  Once those time records are available, Milbank intends to submit

them for compensation as well.

    16.    Below is a table of the Milbank time-keepers on this matter as broken

down by proceeding:

| Attorney | Hours | | | Total Fees Sought | | |
|---|---|---|---|---|---|---|
| | Due Process | District Court | 9th Circuit | Due Process | District Court | 9th Circuit |
| Daniel Perry | 8.4 | 0.7 | 14.5 | $6,200 | $578 | $14,025 |
| Hannah Cannom | 124.75 | 7 | 125.9 | $68,613 | $3,595 | $85,689 |
| Kate Eklund | 0 | 0 | 63 | $0 | $0 | $34,100 |
| Revi-ruth Enriquez | 139.4 | 5.6 | 110.9 | $60,456 | $2,940 | $66,271 |
| Caitlin Hawks | 88.4 | 13.9 | 19.2 | $37,048 | $7,298 | $11,970 |
| Delilah Vinzon | 50.7 | 26.9 | 91.7 | $32,955 | $19,045 | $70,238 |
| Ricky Windom | 84 | 13.5 | 15.8 | $15,540 | $2,498 | $3,131 |
| Total | 495.65 | 67.6 | 441 | $220,812 | $35,605 | $285,423 |

## Evidence that Milbank's Rates are Reasonable

    17.    On January 23, 2014, the *National Law Journal*, a legal industry trade

publication, published the results of its annual survey of the billing rates of the 350

largest law firms in the United States.  A true and correct copy of this article is

attached as <u>Exhibit B</u>.  Milbank is one of the 350 largest law firms in the United

States.  For firms that have their largest office in New York, like Milbank, the

highest average partner billing rate was $882/hour and for associates it was

$520/hour.

Case 2:17-cv-02629-SS Document 59-1 Filed 11/05/18 Page 110 of 121 Page ID
#:3499
Case 1:16-cv-... 02/25/2014 1 of 1 89 ed09 O ... ntry Page 110 of 121 Page 6 of 999

18.    The hourly rates charged in connection with the professional services rendered on behalf of Michael Garcia in this litigation are reasonable.  The rates are comparable to the hourly rates of Milbank's peer firms, most of which are also New York-headquartered firms at the top end of the market.  Thomson Reuters' Peer Monitor Public Rates program compiles attorney and support staff hourly rates as publicly reported in court filings throughout the country.  The high hourly rate for partners based in New York and California offices of Am Law 100 firms was $1195/hour in 2012, for associates it was $990/hour, and for legal assistants and paralegals it was $665/hour.  The data from this program confirms that the hourly rates charged by Milbank in this litigation are in line with those charged by other top-tier "Am Law 100" firms.

19.    Attached hereto as <u>Exhibit C</u> is a true and correct copy of an application filed by Milbank before the United States Bankruptcy Court, District of Nevada in *In re Circus and Eldorado Joint Venture, et al.*, Case No. BK-12-51156. This application is entitled Debtors' Application for an Order, Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014(a), and 2016(b), and Local Rule 2014, Authorizing Employment and Retention of Milbank, Tweed, Hadley & McCloy LLP As Counsel for the Debtors.

20.    Attached hereto as <u>Exhibit D</u> is a true and correct copy of an order of the United States Bankruptcy Court, District of Nevada in *In re Circus and Eldorado Joint Venture, et al.*, Case No. BK-12-51156.  The order is entitled Order Pursuant to Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014(a), and 2016(b), and Local Rule 2014, Authorizing Employment and Retention of Milbank, Tweed, Hadley & McCloy LLP As Counsel for the Debtors.

21.    Courts routinely approve Milbank's hourly rates in fee applications. (*E.g.*, Ex. C at 8; Ex. D at 3, ¶ 3).

22.    On March 31, 2010, in *LV v. New York City Department of Education*, Case No. 03 Civ. 9917,  a district court awarded over $1.2 million in

1    attorneys' fees to Milbank and Advocates for Children of New York for a case

2    brought under 20 U.S.C. § 1400—the Individuals with Disabilities in Education

3    Act. The court awarded $847,184.38 for work performed by Milbank attorneys on

4    a pro bono basis and the remainder for work performed by Milbank's co-counsel.

5    The court found that $600/hour was a reasonable rate for a Milbank partner,

6    $225/hour to $375/hour was a reasonable rate for a Milbank associate depending

7    on the associate's experience and contributions to the case, and that $150/hour was

8    a reasonable rate for a Milbank paralegal. A true and correct copy of this

9    memorandum and order is attached as <u>Exhibit E</u>.

10        23.    In *Instrumentation Laboratory Co. v. Walter Binder,* a patent

11    litigation case, the court awarded plaintiffs approximately $3.6 million in

12    attorneys' fees for work completed by attorneys in the Los Angeles and London

13    offices of Milbank. The court found that $842 and $725 were reasonable rates for

14    the two primary Milbank partners involved in the case. The court additionally

15    found that $475 was a reasonable rate to cover all the Milbank associates who

16    worked on the case. The associates ranged from a third year to a ninth year. A

17    true and correct copy of the order is attached as <u>Exhibit F</u>.

18

19        I declare under penalty under the laws of the United States of America that

20    the foregoing is true and correct.

21        Executed this 25th day of February, 2014 at Los Angeles, California.

22

23

24                        HANNAH CANNOM

25

26

27

28

**EXHIBIT "9"**

**DECLARATION OF CAROL A. SOBEL**

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice before the Supreme Court of the State of California.  This declaration is submitted in support of the attorney fees requested by Claimant's counsel in the above-captioned matter.  It is submitted to provide current reasonable market rates for counsel.  I have personal knowledge of the facts set forth below and, if I were called to testify to those facts, I could and would do so competently.

2.      I was graduated from law school in 1978 and was admitted to practice in December of that same year.  Until April of 1997, I was employed by the ACLU Foundation of Southern California (ACLU).  For the six years prior, I held the position of Senior Staff Counsel in the legal department.  A true and correct copy of my resumé is attached at Exhibit 1.  I have received numerous awards for my work in the area of First Amendment litigation and, more recently, on behalf of homeless persons.  I have been qualified as an expert on two occasions on ethics and the practices of public-interest legal groups, once before the State Bar and once in the Los Angeles Superior Court.  I have presented at CLEs on attorney fees on several occasions.  Most recently, I provided training for attorneys at the Legal Aid Foundation of Los Angeles.  My supporting fee declarations have been cited favorably by numerous  courts, including in *Nadarajah* v. *Holder,* 569 F.3d 906, 916-917 (9th Cir. 2009); *Orantes- Hernandez* v. *Holder,* 713 F.Supp.2d 29, 963-964(C.D.Cal.2010); *Torrance Unified Sch. Dist.* v. *Magee,* CV 07-2164 CAS (RZx) (C.D.Cal. 2008), [2008 YEASTIEST. Lexis 11 95074, 21]; *Atkins* v. *Miller,* CV-01-01574 DDP (C.D.Cal 2007); *Jochimsen v. County of Los Angeles,* B223518 (2d Dist. June 23, 2011); and *Dugan v. County of Los Angeles*, cv 11-08145 CAS (C.D. Cal. Mar. 3, 2014).

3.      Currently, I have a fee motion pending at the Ninth Circuit Court of

1

Appeals, seeking a 2014 rate of $875 an hour in a constitutional litigation case. The Circuit has granted the motion on entitlement and referred the matter to the Appellate Commissioner on the lodestar calculation. I was paid on a retained hourly basis of $795 an hour in 2012. In 2010, I was awarded fees at the rate of $725 an hour by Judge Otero of the Central District of California in a contested fee motion. The case, *Long Beach Area Peace Network v. City of Long Beach*, involved a First Amendment challenge to a permitting scheme in the city of Long Beach. The Ninth Circuit's decision in the case is published at 574 F.3d 1011 (9th Cir. 2009). As set forth below in greater detail, in 2009 I was awarded fees at $710 an hour in two fee motions in the district court, first by Judge Pregerson in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (C.D. Cal. 2009), and then by Judge Matz in *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, cv 07-3072 AHM (C.D. Cal.). In 2008, in a contested fee motion in the United States District Court, I was awarded fees at the rate of $695 an hour by Judge Real, cv 03-1182 R (C.D. Cal. 2008). This is the same case described above currently pending before the Ninth Circuit on the calculation of the lodestar.

4.     During the time that I was Senior Staff Counsel at the ACLU, I was responsible for preparing many fee motions in cases where the ACLU represented the prevailing party. Since the ACLU does not bill clients on an hourly basis for its services, I had to obtain information to establish reasonable market rates for the ACLU lawyers. I did this annually by telephoning partners at firms who knew the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of attorneys at their firms whose rates were then used to set ACLU billing rates.

5.     Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates as I do not charge my clients for representation and I continue to do the same type of civil liberties and civil rights litigation as when I was employed at the ACLU. My cases almost

2

1 exclusively are brought on behalf of low-income populations, who are unable to
2 afford legal representation.  I generally survey annual billing rates at firms the first
3 time each year I prepare a fee motion or enter into settlement discussions regarding
4 fees.  I make it a point to consult with lawyers in both larger firms engaged in
5 complex litigation, such as Loeb & Loeb and Kaye Scholer, as well as smaller
6 boutique civil rights law firms, including Hadsell, Stormer, Keeny, Richardson &
7 Renick, a private firm with five partners, and Litt, Estuar & Kitson, a private firm
8 with three equity partners and several associates at one time.

9          6.    Based on the information I have obtained from these firms, I have
10 formed the opinion that there is an increasing disparity between fees awarded to
11 smaller civil rights firms and public-interest law firms and those awarded to larger
12 firms that occasionally do pro bono civil rights and civil liberties.  This is so even
13 when the civil rights lawyers co-counsel a case with the large firms and even
14 though the skill and experience of the attorneys in question are comparable.  At the
15 same time, the public-interest and private civil rights bar is closer to large firm
16 rates than to small firms that do not do complex litigation.  Billing by lawyers at
17 civil rights firms and organizations at rates even marginally comparable to those of
18 attorneys who do other types of complex litigation is consistent with the decisions
19 of the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984), holding that
20 representation by a non-profit legal group is not a factor in arriving at billing rates
21 for attorneys of comparable skill, experience and reputation.  Based on my
22 experience over the past 33 years working at the ACLU and with the pro bono bar,
23 civil rights lawyers are often more skilled and experienced than their classmates
24 because they handle major litigation from the beginning of their employment, no
25 matter how many years of practice they may have.

26          7.    In addition to speaking with partners at various law firms, I have also
27 become familiar with the market rates charged by attorneys in the Los Angeles
28 area by reviewing attorney fee applications and awards in other cases, as well as

3

decisions awarding fees under fee-shifting statutes. Specifically, in addition to reviewing fee awards to the firms described in paragraph 5, I regularly review fee applications and court awards in the Los Angeles legal market to determine what rates have been sought by and approved for lawyers at public interest firms.

8.    I understand that fees are sought by this motion for the following attorneys and support staff.

| Attorney | Graduation | Rate |
|----------|-----------|------|
| Christopher Knauf | 1996 | $685 |
| Laura Diamond | 1996 | $560 |
| Benjamin Goldstein | 2011 | $365 |
| Alexandra Robertson | 2013 | $310 |
| Marielle Kriesel | n/a | $190 |

9.    I am familiar with Mr. Knauf from the time that he worked at the Disability Rights Legal Center. More recently, he co-counseled a case with Rebecca Thornton, a lawyer who worked with me for eight years. In the course of that litigation, I had occasion to speak with Mr. Knauf about the case. Based on my experiences with him, I believe that Mr. Knauf is highly skilled and experienced in the area of disability rights litigation. For example, the case Mr. Knauf co-counseled with Ms. Thornton, *Bass v. City of Alhambra*, was a disability rights and police misconduct case on behalf of a deaf individual who was investigated on allegations which, if true, would constitute a serious felony. I am aware from my discussions with Ms. Thornton that they obtained an excellent result in that case, with a settlement even before class certification providing for significant policy changes and nearly all of the injunctive relief that they sought in the litigation, along with reasonable damages for the clients and fees for his attorneys.

10.    I also know Laura Diamond. Ms. Diamond was a law clerk at the ACLU when I worked there. After that time, I maintained contact with her,

4

especially when she was an attorney at the Center for Law in the Public Interest (CLPI).  My assessment is that she is a very skilled attorney.  I last spoke in person with Ms. Diamond approximately a year ago.  I am aware that she stopped practicing law for a number of years after her children were born.  I have taken that into consideration in determining the reasonableness of the rate now sought for her, which is considerably below the rate sought for Mr. Knauf, who graduated from law school the same year as Ms. Diamond.  Based on my knowledge of billing rates for lawyers of similar skill, reputation and experience in the greater Los Angeles area, the hourly rate sought in this case is well within the range of reasonable market rates for public interest and civil rights attorneys of comparable skill and experience.

11.    I do not know Mr. Goldstein or Ms. Robertson.  I did review information on their backgrounds available on line.  Based on that information and what was provided to me by Mr. Knauf, and my knowledge of the high expectations Mr. Knauf places on his associates, I am of the opinion that the rates sought for them are well within the range of reasonable market rates for attorneys of comparable skill and experience in Los Angeles.

12.    I base my opinions on the reasonable rates for each attorney on my review of decisions awarding fees in the Los Angeles legal market over the past several years.  I estimate that I read a combination of approximately 50 or more fee awards and supporting declarations and other documentation each year.  Among the decisions I reviewed to form the opinion that $685 an hour is reasonable for Mr. Knauf is a decision approving fees to attorneys at the Disability Rights Legal Center and Disability Rights Advocates at 2012 rates. A true and correct copy of the order in *Communities Actively Living Independent and Free v. County of Los Angeles*, 09-cv-00287 CBM (C.D. Cal.) Dkt. # 255 (June 10, 2013), is attached at Exhibit 2.  The order by Judge Marshall of the Central District of California issued in 2013; however, as the Court notes, the settlement was reached in 2012.  Ex. 2,

5

p.6, The delay in final approval by the Court resulted from the time it took for the Los Angeles County Board of Supervisors to approve the settlement.

13.    In Exhibit 2, the Court approved fees at the rate of $665 an hour to Shawna Parks, identified in the decision as a 1999 law graduate.  I am very familiar with Ms. Parks from the time that she was the legal director of the DRLC. In 2012, Ms. Parks had been practicing five years less than Mr. Knauf has now. Mr. Knauf's requested rate is only $20 above the 2012 rate approved for Ms. Parks.  Considering the considerable additional experience he has and the rise in base rates over the past two years, Mr. Knauf's 2014 rate is below the equivalent 2012 market rate for Ms. Parks.

14.    In the same decision, the Court approved fees at the 2012 rate of $550 an hour for Jennifer Lee, identified as a 2003 law graduate, and $525 an hour for Matthew Strugar, identified as a 2004 law graduate.  Ex. 2, p.6.¶6.  At the time the settlement was reached in *Communities Actively Living*, Ms. Lee was practicing for 9 years and Mr. Strugar was practicing for 8 years.  Mr. Strugar was my law clerk in 2001 and, later, my co-counsel on several cases when he was with a public interest organization in New York.  I view these two attorneys as equivalent to the skill and experience of Laura Diamond, also allowing for the fact that base rates for associate-level attorneys have risen in the past two years as well.  Ms. Diamond's requested rate reflects a four percent annual increase over Mr. Strugar's 2012 approved rate.

15.    The final comparison I drew in Exhibit 2 was to the 2012 rate of $330 an hour awarded to attorney Janssen. *Id.* p.6, l. 4-7.  At the time of the fee settlement in that case, Ms. Janssen was practicing one year less than Mr. Goldstein and one year more than Ms. Robertson.  Taking into account annual step increases as well as increased base rates, the rates of $365 and $310 sought for Mr. Goldstein and Ms. Robertson, respectively, are equivalent to the 2012 rate approved in Exhibit 2 for Ms. Janssen.

16.     Laurence Paradis, the legal director of Disability Rights Advocates ("DRA") in Northern California, recently filed a declaration in support of a fee application by attorneys at the Disability Rights Legal Center in *Los Angeles Unified School District v. Garcia*, Ninth Circuit Case No. 10-55879.  Mr. Paradis was one of the attorneys awarded fees in Exhibit 2. A true and correct copy of the declaration, bearing the ECF header of the Ninth Circuit, is attached at Exhibit 3. Mr. Paradis attested that the 2013 rate for Shawn Parks had increased to $665.  Ex. 2, p.10.  He also attested that the 2013 rate for a 2005 graduate, with the same number of years of experience as Ms. Diamond has, was $565 an hour.  *Id.*  The 2013 rate for a third-year attorney was $355, and the 2013 rate for a first year attorney was $295 an hour.  *Id.*  The requested 2014 rates for the attorneys in this case are five percent or less higher than the 2013 rates in the Paradis declaration.

17.     I also relied on the decision in *Parkinson v Hyundai Motor America*, 796 F.Supp.2d 1160 (C.D. Ca. 2010), in which the Honorable Alicemarie Stotler of the federal district court awarded fees to counsel in a consumer class action dealing with misrepresentations of actual mileage in advertising by an auto manufacturer. A true and correct copy of the decision approving final class settlement and attorney fees is attached at Exhibit 4.  The lead attorney in the case, Eric Gibbs, was awarded fees at $675 an hour and fees were approved at a rate of $545 for Dylan Hughes and $445 an hour for Geoffrey Munroe.  *Id.* at 1172.  I downloaded from PACER and reviewed the declaration filed by Eric Gibbs in support of the fee motion in *Parkinson*, as well as the listings for Eric Gibbs and the other attorneys on the State Bar website and their biographies on the Girard Gibbs firm website. Based on these sources, I understand Mr. Gibbs is a 1995 law graduate, Mr. Hughes is a 2000 law graduate, and Mr. Munroe is a 2003 law graduate.  Mr. Gibbs 2010 rate is only $10 below the rate now sought by Mr. Knauf, who has three years more experience at this point.

18.     Applying a modest three percent annual increase to the 2010 rates

7

1  awarded to Mr. Hughes, the current equivalent rate would be $600 an hour. Using
2  the same assumption for the rate 2010 rate of $445 an hour approved for Mr.
3  Munroe, the current equivalent rate would be slightly more than $500 an hour.
4  Ms. Diamond's requested rate falls in the middle of these two rates. In 2014, she
5  has been practicing a year or two longer than Mr. Munroe was in 2010.

6      19.    Attached at Exhibit 5 is the order awarding fees in *Rutti v. Lojack*,
7  SACV 06-350 DOC, 2012 WL 3151077 (C.D. Cal. 2012), a wage and hour case
8  class action. Judge Carter approved fees for John Glugoski at $650 an hour. *Id.* at
9  p. 5. I reviewed the California State Bar website and, based on the information
10 posted there, understand that Mr. Glugoski is a 1997 graduate. With three years
11 more experience, than Mr. Glugoski had in 2012, Mr. Knauf's 2014 rate is only
12 $25 above the the rate approved in *Rutti*.

13     20.    Attached at Exhibit 6 is a true and correct copy of an order by Judge
14 Otero, awarding fees in 2012 in *Avila v. Los Angeles Police Department*, cv-11-
15 01326  SJO (C.D. Cal. Aug. 2, 2012). The case involved a claim of retaliation in
16 the workplace for whistleblower activities. In *Avila*, the Court awarded fees to
17 Matthew McNicholas at the rate of $700 an hour. Ex. 6, p.4. I have reviewed Mr.
18 McNicholas' declaration in support of fee requests filed in several cases, including
19 a declaration he recently filed in *Simplis v. Culver City*,10-cv-09497 MWF (C.D.
20 Cal. 7/16/13) (Doc. 257-10), in which he sought a rate of $750 an hour. I
21 understand that the case settled and the motion was not decided by the Court.
22 Baed on my review of all of the above, I understand that Mr. McNicholas is a 1997
23 law graduate. In the *Alveoli* decision, the Court also approved the rate of $450 an
24 hour for Alyssums Schabloski, a 2008 law graduate at the McNicholas firm. Mr.
25 Knauf is practicing three years longer than Mr. McNicholas and Mr. Goldstein is
26 practicing one year less than Ms. Schabloski was in 2012. Both rates are below the
27 2012 rates awarded to attorneys of comparable skill and experience at the
28 McNicholas firm.

8

S-119

21.    As a point of comparison to the rates at commercial firms, I have attached at Exhibit 7 a true and correct copy of a recent declaration by Hannah Cannom, setting forth the 2014 rates for Milbank Tweed & Hadley.    The declaration was filed in support of a fee application in a case the firm co-counseled pro bono with the Disability Rights Legal Center in *Los Angeles Unified School District v. Garcia*, Ninth Circuit Case No. 10-55879. Ms. Cannom attested to the fact that she is an 8th-year associate and that her 2014 rate is $800 an hour. Ex. 7, ¶2,6. The senior Milbank attorney on the case, a 1997 law graduate, was billed at $1,135 an hour. *Id.* at ¶7. Other Milbank attorneys for whom fees are sought in the case included a 2002 graduate billed at $900 an hour and a 2008 graduate billed at $760 an hour. *Id.* at ¶¶8,10.

22.    I am informed that counsel are also seeking compensation for a paralegal at $190 an hour. In my experience, this is a reasonable rate. In 2009 in *Fitzgerald v. City of Los Angeles*, Judge Pregerson approved an award of fees including paralegals at the ACLU at $175 an hour. *See* 2009 U.S. Dist. LEXIS 34803, *10 (C.D. Cal. 2009). In *Communities Actively Living*, plaintiffs' counsel were awarded compensation for paralegals at the rate of $230 to $240 an hour. Ex. 2, p.7. In *Garcia*, Laurence Paradis attested that Disability Rights Advocate's billing rate for paralegal was $250 an hour. Ex. 3, p. 10.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of July, 2014 at Santa Monica, California.

CAROL A. SOBEL

9

S-120